## M. S. SHACKELFORD *v.* L. E. BROWN.

1. EVIDENCE. *Answer in chancery. Rule requiring two witnesses. Code 1892, § 535.*

   The rule, under § 535, code 1892, requiring two witnesses, or one witness and corroborating circumstances, to overthrow an answer denying the allegations of an unsworn bill, does not apply where the answer itself, although positive and unequivocal in its denials, shows that the respondent had no knowledge of the matter denied. *McGehee* v. *White,* 31 Miss., 41, overruled.

2. SAME. *Answer in chancery. Weight as evidence.*

   By calling for an answer, complainant is precluded from attacking the general credibility of defendant as a witness, and the answer, so far as it is responsive to the bill, is evidence; but, as such, it has no arbitrary or invariable value. The court, in estimating its weight, may look to the grounds on which respondent makes his denials.

3. SAME. *Circumstances corroborating witness. Tax title. Case.*

   Where the answer denies the allegation of the unsworn bill that complainant and defendant's grantor, finding the lands of each erroneously assessed to the other, agreed to let the assessment stand, and pay the taxes as assessed, and one witness testifies positively to the agreement, and there is evidence that the parties, after knowledge of the erroneous assessment, allowed it to so remain, and continued for years to pay on each other's land, and, on one occasion, spoke of the mistake, this meets the requirement of the rule that there must be one witness and "corroborating circumstances" to overthrow the answer.

FROM the chancery court of Lauderdale county.

HON. W. T. HOUSTON, Chancellor.

For the facts, reference is made to the opinion.

*Witherspoon & Witherspoon,* for appellant.

The only fraud alleged is the violation by Stroud of his contract to pay the taxes. It was the duty of appellee to pay

taxes on her own land, and the alleged agreement was to answer for the debt of another, and was within the statute of frauds. Again, it is to be construed as an agreement to pay the taxes subsequent to 1875, which was an agreement not to be performed within a year, and was therefore void, because not in writing. The agreement, being a nullity, did not disable Stroud from purchasing at tax sale.

If Stroud agreed to pay the taxes on appellee's land, it must have been the intention that this should only continue until the mistake should be corrected by a new assessment or by the board of supervisors. The mistake in the roll of 1875 cannot continue longer than the roll itself. It is shown by the evidence that McLemore himself expected that Stroud would correct the mistake at the next assessment.

The testimony of McLemore, if true, is insufficient, because the law requires two witnesses, or one witness and corroborating circumstances, to overthrow a denial of the answer. Code 1892, § 535; *Snell* v. *Fewell*, 64 Miss., 655. It is not contended that there are two witnesses to prove the fraud, and there are no circumstances which corroborate the testimony of McLemore. The fact that the erroneous assessment continued, and that, for several years, appellee paid the taxes on the wrong land, would seem to prove that, during that period, she did not know the land belonged to Stroud. It is much more reasonable to suppose that the land was permitted to stand so assessed because she was ignorant of the fact that it did not belong to her. It is true the mixed condition of the assessment was an appropriate subject-matter for such a contract as is attempted to be proved, but is not corroborating evidence that the contract was made. The corroboration is rather in support of the denials of the answer.

*J. S. Hamm,* for appellee.

Stroud was bound, by his agreement, to pay the taxes on the land, and was disabled from buying it at tax sale. *Rule* v.

*Broach,* 58 Miss., 552; *Holmes* v. *McGehee,* 63 *Ib.,* 50; *Chiles* v. *Gallagher,* 67 *Ib.,* 413; *Faison* v. *Johnson,* 70 *Ib.,* 219.

As Stroud got no title, his conveyance of his title to Mrs. Shackelford gave her no title. Besides, Mrs. Brown was in possession of the land all the time, and this was notice of her title.

COOPER, C. J., delivered the opinion of the court.

This is a bill exhibited by the appellee against the appellant seeking cancellation of a hostile title asserted by appellant to the southwest quarter of northwest quarter of section nine, township six, range sixteen, east, in Lauderdale county. The complainant alleges that she is the real owner of said lands, and that, in the year 1875, one Stroud, the father of the defendant, was the owner of the southeast quarter of northwest quarter of said section; that, by accident and mistake, in said year the land of appellant was assessed to Stroud and his land was assessed to her; "that this mixed condition of the assessment rolls was first discovered by Stroud, complainant being ignorant of such fact until it was made known to her by Stroud; that at the time he made such fact known to her, which was soon after the assessment of 1875, he proposed to complainant to let it stand just as it was on the assessment rolls, and that he, the said Stroud, would pay on complainant's land and requested complainant to pay on his land, and complainant, never suspecting any wicked or fraudulent purpose or design on the part of said Stroud, and said lands being adjoining and of equal value, the taxes being the same on each subdivision, consented to such proposition and did in fact pay the taxes on the land of said Stroud until the year 1882." The bill then alleges that Stroud, in fraud of complainant, permitted and procured the land of complainant to be sold for its taxes on the fifth of March, 1879, and bought it in at such sale; that she never suspected any scheme, trick or fraud on the part of Stroud until the year 1882, when he notified complainant of

the sale for taxes of her land and his purchase thereof, and forbid her to exercise any act of ownership over the same; that she has remained in possession of the land until the filing of this bill.

By another averment of her bill the complainant charged "that she had lived near the said Stroud as a neighbor and had known him well and favorably, as she thought, for a great many years prior to this agreement as before stated, and she had implicit confidence in him, as he well knew, and, to carry out the nefarious scheme and make his fraud complete, he frequently mentioned to complainant the error of the assessor, and always stated that he was carrying out his part of the agreement in good faith; and, even as late as the spring of 1882, a long time after said land was sold, he talked about it and made the impression upon complainant that he was paying taxes on her land as she was paying on his."

It is further charged that, in December, 1882, Stroud conveyed the land to the defendant, who is his daughter; that, though the deed recites the consideration paid by the defendant to have been one hundred and fifty dollars, the conveyance was in fact voluntary, and made by Stroud in the distribution of his estate among his children. The bill is not sworn to, nor is the answer of the defendant under oath waived. The defendant filed a sworn answer, by which she denies that complainant is the owner of the land described in her bill, and denies that she is in possession of the land, but avers that Stroud, soon after his purchase at tax sale in the year 1879, entered into possession of said land, and that he and she, the defendant, as his vendee, have since "held the open, exclusive, peaceable, continuous and adverse possession thereof" for more than ten years, and she pleads her title so acquired against the assertion of complainant's title. The defendant admits that the land was assessed to Stroud in the year 1875, but says that, on the roll made in 1878, they were assessed to "unknown owner," and this assessment she charges was made, not through

accident or mistake, but because complainant did not give in the land to the assessor, and because she did not own it.   She admits that Stroud owned the southeast quarter of northwest quarter of the same section, and that it was by mistake assessed to complainant.   Answering that clause of the bill hereinbefore first quoted, she says she "does not know, nor is she informed, nor has she any means of information, whether the said Stroud or complainant first learned that said land was assessed to complainant; but the defendant denies that said Stroud did, soon after the assessment of 1875, or at any other time, propose to complainant to let the assessment of said lands stand just as they then stood on the assessment rolls, and that he would pay the taxes on complainant's land, and requested complainant to pay on his said land, and that any wicked or fraudulent design ever actuated said Stroud to say or do anything with reference to said land and the taxes thereon."   The defendant then proceeds to set forth that, on the roll of 1875, the taxes on complainant's land was twenty per cent. higher than on Stroud's land, and on that of 1878 fifty per cent. higher.   She denies "that the said Stroud knew of any agreement on his part with the complainant to pay the taxes on said land, and that complainant was relying upon him to pay said taxes, and that he permitted and procured, by fraud and wickedness or otherwise, said land to be sold for its taxes on March 5, 1879.

Replying to that clause of complainant's bill secondly above set forth, she says: "The defendant admits that the complainant lived near the said Stroud as a neighbor, and had known him well and favorably for a great many years prior to said pretended agreement, and that she had implicit confidence in him."

There were several amendments made by complainant to her bill, none of them being under oath, and none of them waiving an answer under oath, to all of which the defendant replied by sworn answer.   No matter material to the question now involved was set up in said amendments.

The fact that Stroud did make the precise agreement set up by the complainant is distinctly and unequivocally proved, and the evidence does not suggest that the defendant was present at the time, or could have had any personal knowledge touching the agreement. But the contract was proved by only one witness, and the defendant now invokes the rule that when the averments of an unsworn bill are distinctly and unequivocally denied by a sworn answer, such averments can only be established by the testimony of two witnesses, or by that of one witness and corroborating circumstances. The weight and effect of a sworn answer to an unsworn bill is well settled in this state.

A denial upon information and belief is "otherwise than by the general traverse," and puts complainant to proof. *Carpenter* v. *Edwards*, 64 Miss., 595. But such answer may be overthrown by less than the testimony of two witnesses, or one witness and corroborating circumstances. *Toulme* v. *Clarke*, 64 Miss., 471; *Snell* v. *Fewell*, *Ib.*, 654.

In *McGehee* v. *White*, 31 Miss., 41, it was decided by this court that where the answer is positive and unequivocal, then, though it appear by the answer itself that the defendant had no personal knowledge of the matter denied, the court cannot look to the ground upon which the denial is made, or inquire whether they are sufficient or not, in estimating its value as evidence. We think, in this decision, the court converted a rule of evidence into one of pleading, and gave to the denial a force and effect to which it was not entitled. The complainant, by calling upon the defendant to answer, undoubtedly gives to his answer, in so far as it was responsive to the bill, the character of evidence, and precludes himself from attacking the general credibility of the defendant as a witness; but when the court comes to consider the weight and effect of the answer for the purpose of discovering the very truth, it would be departing from the very purpose of the investigation to give to that answer, any more than to any other evidence, a peculiar and

arbitrary value. The oath of witness against witness ordinarily leaves the matter under investigation *in equilibrio,* and since the plaintiff, under such circumstances, has failed to establish his cause, no relief will be granted; but as circumstances may afford support to the evidence of a single witness for the plaintiff, and thus cause his testimony to counterbalance that of the defendant, so may the balance be destroyed by circumstances which, adding nothing to the plaintiff's evidence considered alone, detract from the value of the defendant's answer viewed as evidence. The answer is yet evidence, and to be so considered, but it is only evidence, and, as such, no arbitrary and invariable rule can, in the nature of things, be applied to it. The reason upon which the rule rests is " that the plaintiff calls upon the defendant to answer an allegation of fact which he makes, and thereby he admits the answer to be evidence of that fact. If it is testimony, it is equal to the testimony of any other witness, and as the plaintiff cannot prevail unless the balance of proof is in his favor, he must either have two witnesses, or some circumstance in addition to a single witness, in order to turn the balance." 2 Story's Eq., § 1528.

. The extent and effect of the rule in its origin seems to be involved in some obscurity, and though it is very generally formulated in positive language, its application in early cases was not uniform or consistent. In bills for discovery only, the plaintiff, having obtained the discovery sought, proceeded in his action at law, and the jury was left to determine the cause upon the credibility of the testimony; and where the bill is for discovery and relief, it seems to have been discretionary with the chancellor to direct an issue to be tried by a jury.

In *East India Co.* v. *Donald,* Lord Eldon said: " Upon a bill for discovery not praying relief, the plaintiff goes to law, giving the defendant the benefit of his answer; if relief is prayed, the rule is laid down here (and it is much too late now to discuss the principle of it) that if there is nothing more than positive assertion, unqualified in the terms of it by one witness, and

a positive denial by the defendant, the plaintiff shall not have a decree; and this court giving relief beyond the law, will not give it on such terms. That has been laid down and acted upon. I agree there may be doubt whether the principle is as just as that of the legal rule, on account of the interest of the party, to be contrasted with the evidence of a person having no interest. But in process of time great difficulty arose upon taking it for granted that there was an exception upon circumstances giving greater credit to the witness. As to which it must be taken that credit is given to the circumstances, abstracting from the mind, if you can, that one is altogether a disinterested witness. If the rule is to be adopted without this exception, it is difficult to say upon what principle the court ever sent such a case to the jury. Accordingly, it appears that some chancellors have done so, others have not.''

In *Smith* v. *Brush*, 1 Johns. Chy., 459, Chancellor Kent said that, where the positive assertion in the bill was met by a clear and positive denial in the answer, it was discretionary with the chancellor to award an issue to be tried by a jury, and, under the circumstances of that case, he denied the issue and dismissed the bill.

In *Ibbotson* v. *Rhodes*, 1 Eq. Cas. (abridged), 229, the answer denied notice of the plaintiff's title, but the plaintiff proved notice by one witness. An issue was awarded, that a jury might determine the fact.

In *Clarke* v. *Van Rheimsdeck*, 9 Cranch, 153, the positive averment of the bill was met by an equally positive denial, but it appeared that the fact asserted by the defendant was not within his personal knowledge. In delivering the opinion of the court, Chief Justice Marshall said: ''The weight of an answer must also, from the nature of evidence, depend, in some degree, on the fact stated. If a defendant asserts a fact which is not and cannot be within his knowledge, the nature of his testimony cannot be changed by the positiveness of his assertion. The strength of his belief may have betrayed him

into a mode of expression of which he was not fully apprised. When he intended to utter only a strong conviction of the existence of a particular fact, or what he deemed an infallible deduction from facts which were known to him, he may assert that belief or that deduction in terms which convey the idea of knowing the fact itself. . . These traits in the character of testimony must be perceived by the court, and must be allowed their due weight, whether the evidence be given in the form of an answer or a deposition. The respondents could found their assertion only on belief. They ought so to have expressed themselves, and their having, perhaps incautiously, used terms indicating a knowledge of what, in the nature of things, they could not know, cannot give to their answer more effect than it would have been entitled to had they been more circumspect in their language."

This vigorous reasoning was pressed upon this court in the case of *McGehee* v. *White*. But the court held a different rule, and said: "He (the defendant) may have made the denial upon information which he had received, or from a state of facts which he knew to exist, which satisfied his mind of the correctness of what he stated. Whether the evidence upon which he founded his answer was sufficient to justify it, or whether he had any evidence at all to support it, is not the question. He was called upon to answer a specific and material charge upon his oath, and he responded to the call by a positive denial, and, whether true or false, it must have the force of evidence in the cause, unless counterbalanced by two witnesses, or one witness and corroborating circumstances. It cannot be said that an answer which is a direct and positive denial, of a charge in a bill shall not have its legal effect as evidence, because it is made upon insufficient ground. The answer, therefore, in this respect must prevail, unless other circumstances appearing in the case show that the deed was accepted by Mrs. White. Do the circumstances and other testimony in the case, then, tend to that conclusion? We think not." This

decision, as we have said, converts what is a rule of evidence into one of pleading, and its effect is, or may be, to obstruct the search for truth, or to prevent effect being given to the truth when discovered. That it is opposed to the overwhelming weight of authority will be perceived by a reference to the cases cited by Mr. Beach in his work on Modern Equity Practice, pages 392 *et seq.* The rule established is one merely of practice, and no property rights are disturbed by overruling the case of *McGehee* v. *White*, which is accordingly done.

In the present case, we think, also, that the testimony of the witness for complainant is corroborated by other circumstances abundantly proved or admitted by the answer.

We find that, in fact, the precise thing was done that complainant says was agreed to be done. The land of Stroud remained assessed to the complainant for seven years, during which time she paid the taxes thereon. Her land was assessed to Stroud for two or three years, during which time he paid the taxes thereon. The answer does not deny, and, therefore, the facts are to be treated as proved, that complainant and Stroud knew, soon after the assessment of 1875, of the erroneous assessments, and that "as late as the spring of 1882, a long time after said land was sold, he talked about the matter, and made the impression upon complainant, that he was paying taxes on her land as she was paying on his." What the parties actually did for years is strongly corroborative of the testimony of the witness that there was an agreement between them that this should be done.

We are not prepared to say that the finding by the chancellor that complainant was in possession of the land when Stroud conveyed to the defendant is not supported by the facts. The evidence is conflicting, but that for the complainant is sufficient to uphold the decree.

The possession of complainant was notice to the defendant of her equity against Stroud.

*The decree is affirmed.*