# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02003-SCT

*ISAAC STUCKEY AND KAREN STUCKEY*

*v.*

*THE PROVIDENT BANK*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2003 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | R. CHARLES ROBB |
| ATTORNEY FOR APPELLEE: | RICHARD SCOTT PIETROWSKI |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Isaac and Karen Stuckey ("the Stuckeys"), husband and wife, appeal to this Court from a final judgment of dismissal entered by the Chancery Court of the First Judicial District of Hinds County.  The Stuckeys assert that the chancery court failed to consider both the substantive and evidentiary value of the allegations stated in their sworn  complaint and thus abused its discretion in granting summary judgment.     Finding the Stuckeys' argument unconvincing and the chancellor's final judgment of dismissal well-founded, we affirm.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On November 29, 1999, Isaac and Karen Stuckey refinanced their home through Southern Mortgage Company ("SMC"), a Louisiana corporation, and borrowed a total of

$27,000. In accordance with the provisions of the fully executed loan documents, SMC was named as the Stuckeys' official lender and beneficiary, and the account was to be funded through a warehouse line of credit which SMC maintained with the Evangeline Bank, another Louisiana financial institution. The Stuckeys, who were securing the loan in order to pay off mounting debt obligations, received their loan proceeds from SMC on December 3, 1999.

¶3.     On December 10, 1999, the Provident Bank ("Provident"), an Ohio banking corporation, purchased the rights to the Stuckey loan from SMC by way of payment of the appropriate funds wired directly to the Evangeline Bank for credit to SMC's account.  As of January of 2001, the Stuckeys stopped making their mortgage payments and were in default on their loan.   Thus, Provident, as the holder of the deed of trust, instituted foreclosure proceedings against the Stuckeys.

¶4.     On January 7, 2002, the Stuckeys commenced their subject lawsuit in the Chancery Court of the First Judicial District of Hinds County by filing a *sworn* pleading entitled "Motion For Injunctive Relief And Complaint," (hereinafter referred to simply as "complaint").[1]   The named defendants were "Royce McNeal, Brent McNeal, Brian Michael Pellissier, James R.

---

[1]This complaint was signed by the Stuckeys' attorney.  However, appearing immediately after the attorney's signature and law firm information is an Affidavit which stated: "Personally appeared before me, the undersigned authority for said jurisdiction, Isaac Stuckey and Karen Stuckey, who, having first been sworn my me, state on oath that the facts and matters set forth [in] the foregoing Motion For Injunctive Relief and Complaint are true and correct as stated."  Thereafter appear the signatures of Isaac Stuckey and Karen Stuckey, followed by the language "Sworn to and subscribed before me, this the 5th day of January, 2002."  After this language there appears the signature of the Stuckeys' attorney, as a notary public, along with his notary seal and commission expiration date.

Hall, and Craig A. Netterville,[2] The Provident Bank, Ray Michael Gibson, Jr., Universal Title & Escrow, L. L. C., Jo Alice Rankins, American Pioneer Title Insurance Company, Lem Adams, III, XYZ corporation, and John Does 7-15." The thirty-three page complaint, which consisted of 147 paragraphs, exclusive of the three-page prayer for relief, sought, inter alia, to enjoin Provident from foreclosing on the Stuckey loan and alleged that Provident along with its agents had conspired with SMC to engage in predatory lending practices to the detriment of the Stuckeys. To this end, the Stuckeys asserted that Provident and SMC had collaborated in securing the Stuckeys' loan and that Provident had pre-approved the loan for closing and promised SMC a yield premium spread in exchange for allowing it to purchase the loan at a discount. In addition to seeking injunctive relief, the Stuckeys requested the chancery court to determine the validity of liens, cancel and remove clouds from title, set aside conveyances of deeds of trust and direct an accounting. The complaint was accompanied by the Stuckeys' sworn affidavit. Attached to the complaint were twenty-seven pages of documents relating to SMC[3], including corporate records from the Secretary of State of the State of Mississippi.

¶5.    A month later, on motion of two of the defendants, Ray Michael Gibson, Jr., and Universal Title & Escrow, L. L. C., the case was removed to the United States District Court for the Southern District of Mississippi; however, the case was subsequently remanded back

---

[2]Royce McNeal, Brent McNeal, Brian Michael Pellissier, James R. Hall and Craig A. Netterville were named separately as adult citizens of the State of Louisiana doing business in the State of Mississippi as Southern Mortgage Company d/b/a Heritage Mortgage Company ("SMC"), a Louisiana corporation. The complaint and amended complaint do not name SMC as a party to the suit.

[3]On March 7, 2001, Southern Mortgage Company filed for a chapter 7 bankruptcy, and pursuant to 11 U.S.C. § 362(a), all actions against SMC were automatically stayed.

to the Chancery Court of Hinds County. Upon remand, the chancery court, on January 28, 2003, entered a very detailed scheduling order in several pending cases, including the case sub judice. Since we deem this scheduling order to be of significant import in this case, we restate here verbatim the provisions of this scheduling order:

Pursuant to Rule 16 of the *Mississippi Rules of Civil Procedure*, it is:

ORDERED that motions for joinder of parties or amendments to the complaint shall be served on or before February 28, 2003.

ORDERED that a hearing will be conducted on all pleadings for joinder of parties or amendments to the complaints on March 7, 2003 at 10:00 a.m.

ORDERED that all amended pleadings shall be filed and service of process shall be completed as to any and all parties not previously named as Defendants on or before April 1, 2003.

ORDERED that (I) responsive pleadings pursuant to Rule 12 of the *Mississippi Rules of Civil Procedure* to all amended pleadings and (ii) all other motions not presently pending which any party desires to be heard at the July 28, 2003 setting, shall be served on or before April 30, 2003.

ORDERED that Plaintiffs shall file a written response to all motions filed prior to or on April 30, 2003 on or before June 15, 2003.

ORDERED that a hearing shall be conducted on all motions filed prior to or on April 30, 2003 on July 28, 2003 at 9:30 a.m. Should counsel desire for any motions presently pending to be heard on said date, then counsel shall file a notice of hearing in connection with such motions prior to April 30, 2003.

ORDERED that all experts of Plaintiffs shall be designated on or before August 31, 2003.

ORDERED that all experts of Defendants shall be designated on or before September 30, 2003.

ORDERED that all discovery shall be completed on or before December 2, 2003.

4

ORDERED that all dispositive motions, with exception of evidentiary in limine motions, shall be served on or before January 29, 2004.

ORDERED that the opposing party shall file a written response to all dispositive motions and other motions filed prior to or on January 29, 2004 on or before February 28, 2004.

ORDERED that a hearing shall be conducted on all dispositive motions and any other motions filed prior to or on January 29, 2004 on March 29, 2004 at 9:30 a.m.

ORDERED that nothing contained herein shall constitute a waiver of any defense of any Defendant in any of the above styled and numbered civil actions.

¶6. In compliance with the chancery court's scheduling order, the Stuckeys filed an amended complaint on March 7, 2003. Unlike the original complaint, this amended complaint was signed only by the Stuckeys' attorney, and was thus an *unsworn* pleading. On April 30, 2003, Provident filed its answer accompanied by a motion for summary judgment. Attached to Provident's motion, were an affidavit, exhibits, deposition excerpts, and copies of checks disbursed at the Stuckeys' loan closing. Based on the clear and unequivocal provisions of the scheduling order, the Stuckeys were directed by the chancellor to file a written response to Provident's timely filed motion for summary judgment by June 15, 2003. Interestingly, this June 15th court-imposed deadline arrived and passed uneventfully with the Stuckeys failing to file a written response to Provident's motion for summary judgment, with the attached exhibits. On July 17, 2003, finding that no genuine issues of material fact existed for trial, the chancellor entered an order granting Provident's motion for summary judgment. On August 14, 2003, the chancery court entered its Final Judgment as to The Provident Bank wherein, pursuant to the previously entered order granting summary judgment, the chancery court

5

entered final judgment in favor of Provident on all claims asserted by the Stuckeys in their amended complaint, dismissed the amended complaint with prejudice, and certified that dismissal as final under Miss. R. Civ. P. 54(b).

¶7. On appeal, the Stuckeys assert two issues for us to consider: (1) Whether the sworn complaint "filed and of record" constituted evidence on material issues so as to create triable issues which thus defeated the motion for summary judgment; and (2) Whether the sworn complaint established evidence to place the investigation of Provident's notice of irregularities of the loan closing "*in equilibrio*,"[4] thus creating a triable issue concerning Provident being a holder in due course. Not surprisingly, the Stuckeys fervently assert that we should resolve these issues in their favor and thus reverse the chancellor's grant of summary judgment; but quite interestingly, the Stuckeys likewise assert in their brief that this case ought to be reversed and remanded "to allow the Stuckeys' (sic) discovery and a trial on the issues raised."

---

[4]The only case decided by this Court in which the term "*in equilibrio*" is used is **Shackelford v. Brown**, 72 Miss. 380, 17 So. 896, 897 (1894). This term does not even appear in Black's Law Dictionary. However, in the context of its use, the term means "equally balanced" or "on equal footing."

6

**DISCUSSION**

¶8. The standard of review of a trial court's grant of a summary judgment motion is de novo. *Miller v. Meeks*, 762 So.2d 302, 304 (Miss. 2000) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 63 (Miss. 1988)). Accordingly, this Court must employ a factual review tantamount to that of the trial court when considering evidentiary matters in the record. *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss. 1996). By design, the threshold for summary judgment is high and requires that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). "If any triable facts exist, the lower court's grant of a summary judgment will be reversed; otherwise the decision will be affirmed." *Miller*, 762 So.2d at 304 (citing *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss. 1983)). "When a motion for summary judgment is made and supported as provided in Rule 56 an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id*.

## I. WHETHER THE CHANCERY COURT PROPERLY GRANTED SUMMARY JUDGMENT.

¶9. Central to the Stuckeys' argument that genuine issues of material fact still exist is their assertion that a sworn complaint, in and of itself, represents admissible evidence sufficient to defeat a motion for summary judgment. The Stuckeys maintain that the chancery court

7

erroneously overlooked the statements and factual inferences contained within the four corners of their thirty-three page complaint and misapplied the law by granting summary judgment. Conversely, Provident urges that while a complaint must be considered by the trial court on a motion for summary judgment, the court only considers the allegations contained therein.

¶10. The procedure governing summary judgment is unequivocal and its function as well as purpose is entrenched in this Court's precedent. The comment to Miss. R. Civ. P. 56

reads in relevant part as follows:

> The purpose of Rule 56 is to expedite the determination of actions on there merits and eliminate unmeritorious claims or defenses without the necessity of a full trial....Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried...[I]n addition to providing an effective means of summary action in clear cases, it serves as an instrument of discovery in calling forth quickly the disclosure on the merits of either a claim or defense on pain of loss of the case for failure to do so.

Miss. R. Civ. P. 56 cmt. In *Brown v. Credit Ctr., Inc.*, 444 So.2d 358 (Miss. 1983), the first case addressing Miss. R. Civ. P. 56 after our enactment of the Mississippi Rules of Civil Procedure, we clearly explained our Rule 56 summary judgment procedure by quoting portions of the Comment of the Advisory Committee which had assisted this Court in the drafting our rules of civil procedure:

> The motion for a summary judgment challenges the very existence of legal sufficiency of the claim or defense to which it is addressed; in effect, the moving party takes the position that he is entitled to prevail as a matter of law because his opponent has no valid claim for relief or defense to the action, as the case may be.

8

Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by *introducing outside evidence showing that there are no fact issues that need to be tried*.

*Brown*, 444 So. 2d at 362 (emphasis added). In *Brown* a creditor brought an action against debtor for the repayment of the balance due on a loan. *Id*. at 361. In defense, the debtor asserted a series of affirmative matters alleging that the creditor had violated the Truth In Lending Act. *Id*. In finding summary judgment appropriate, we concluded that the debtor's allegations amounted to mere denials and that her response to the creditor's motion to dismiss was "woefully inadequate". *Id*. at 364. In so concluding, we read the "unmistakable language" of Rule 56 as providing "that mere denial is insufficient to create an issue of fact....This is true whether the denial be in pleadings, briefs or arguments. Only sworn denials providing a credible basis therefore in evidentiary fact will suffice." *Id*. Citing federal precedent, we ultimately held:

> *Our Rule 56 mandates that the party opposing the motion* [for summary judgment] *be diligent*. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Liberty Leasing Co. v. Hillsum Sales Corporation*, 380 F.2d 1013, 1015 (5th Cir. 1967). The party opposing the motion is required to bring forward *significant probative evidence demonstrating the existence of the triable issue of fact*. *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982). This Carolyn L. Brown [debtor] has wholly failed to do.

444 So.2d at 364 (emphasis added).

¶11. The Stuckeys have clearly misapprehended the fact-driven purpose and function of summary judgment in favor of the much different Miss. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted. While the two rules provide for dismissal

of actions, their bases are completely different. Accordingly, a Rule 12(b)(6) motion tests legal sufficiency, and in applying this rule "a motion to dismiss should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of the claim." ***Missala Marine Services, Inc. v. Odom***, 861 So.2d 290, 294 (Miss. 2003). Quite differently, Rule 56 tests the notion of well-pled facts and requires a party to present probative evidence demonstrating triable issues of fact. In ***Shaw v. Burchfield***, 481 So.2d 247 (Miss. 1985), we clearly stated:

> The summary judgment movant has a burden of persuasion; a burden to establish that there is no genuine issue of material fact to be tried. ***Pearl River County Board v. South East Collection***, 459 So.2d 783, 785 (Miss. 1984); ***Brown v. Credit Center, Inc.***, 444 So.2d 358, 362 (Miss. 1983). The party opposing the motion must rebut, if he is to avoid entry of an adverse judgment, by bringing forth probative evidence legally sufficient to make apparent the existence of triable fact issues. ***Smith v. First Federal Savings and Loan Association of Grenada***, 460 So.2d 786, 792 (Miss. 1984).

481 So.2d at 252.

¶12.    Summary judgment, as defined under both our state and federal rules of civil procedure, is a mechanism by which a moving party is able to pierce the allegations made in the opponent's pleadings and, quite simply, place the non-moving party (opponent) in a position of having to convince the trial court via discovery documents (depositions, answers to interrogatories, admissions, etc.) and/or sworn affidavits that there are genuine issues of material fact which require resolution by a plenary trial before the trier-of-fact. In this way, summary judgment roots out mere accusation and conjecture in favor of merit and ultimately functions to force a non-movant to present some modicum of material evidence. While

10

summary judgment is not a substitute for the trial of disputed fact issues, it is an effective rule of procedure which forces parties to produce evidence sufficient to convince a trial court that a genuine issue of material fact exists. **Brown**, 444 So.2d at 362.

¶13.    In this case, the Stuckeys have included a litany of allegations in their sworn complaint which, if supported, would produce genuine issues of material fact for trial.    However, the Stuckeys have mistakenly relied solely on their sworn complaint in an effort to avoid summary judgment. In support of their sole reliance on their sworn complaint, the Stuckeys cite easily distinguishable case law as holding that a sworn pleading is admissible evidence.    In **Simon v. Desporte**, 150 Miss. 673, 116 So. 534 (1928), a case cited by the Stuckeys, Sophie Desporte sued Joe Simon in the Circuit Court of Harrison County for breach of contract due to Simon's failure to execute and deliver a deed to Desporte subsequent to her payment to Simon of the stated consideration under the deed.    Prior to institution of the circuit court action, Desporte had commenced a chancery court action by filing a sworn bill of complaint which contained allegations inconsistent with the evidence which she offered during the circuit court trial. Simon sought unsuccessfully to introduce this sworn chancery court pleading to rebut the evidence presented by Desporte during the circuit court trial.    Desporte claimed that she had signed the chancery court bill of complaint under oath without reading it.    We held that the circuit judge improperly excluded this evidence. 116 So. at 535.    In so holding, we stated that "admissions in a pleading sworn to by the party in whose behalf it was filed are admissible against him in another action." **Id**. at 535 (citations omitted).    While we fully adhere to our

11

holding in *Simon* and agree that in the proper context an admission made by a party-opponent in prior litigation can be used as evidence, we find that *Simon* is wholly inapplicable to the case sub judice. A party attempting during trial to introduce as evidence for impeachment purposes a party-opponent's sworn admission is altogether different than parties attempting to rely on their own sworn allegations, that and that, alone, in an effort to save themselves from summary judgment.

¶14. So that there be no misunderstanding, the express provisions of Rule 56(c) and our case law interpreting this rule mandate that the trial judge, in considering a motion for summary judgment, must inter alia review and consider "the pleadings.... on file." Certainly, the trial judge must consider the pleadings, whether they be sworn or unsworn. Although disputed by the Stuckeys, we find clearly from the record before us that the chancellor in today's case did in fact consider inter alia the Stuckeys' sworn complaint and their unsworn amended complaint en route to granting Provident's motion for summary judgment.

¶15. We can thus state with confidence that the chancellor dutifully complied with the Rule 56 provisions by considering inter alia the Stuckeys' pleadings. The provisions of Rule 56(e) which caution practitioners that they "may not rest upon the mere allegations or denials of [their] pleadings," clearly do not mandate a grant of summary judgment if there is no response to the summary judgment motion; however, Rule 56(e) does caution that if the non-moving party fails to respond, "summary judgment, *if appropriate*, shall be entered against [the non-moving party]." (Emphasis added). We can also state with confidence that our learned trial judges have on many occasions, in compliance with Rule 56 and our case law, quite

12

appropriately denied summary judgment motions even though the non-moving party failed to respond to the motion. The non-moving party merely failed to respond at his/her peril, and survived the motion anyway.

¶16.    However, the Stuckeys propose that the allegations contained in their sworn complaint should be deemed as creating genuine issues of material fact because they, themselves, believe these allegations to be true. Again, this assertion is contrary to the spirit of Rule 56, and our case law interpreting our summary judgment procedure.

¶17.    In *Dennis v. Searle*, 457 So.2d 941 (Miss. 1984), this Court was confronted with the propriety of a chancery court's grant of summary judgment, when the trial court had before it for consideration several documents, including a sworn complaint. Dennis had sued the Searles in chancery court on theories of fraud and breach of contract after Dennis discovered termite infestation in the house which he had purchased from the Searles. In due course, the Searles filed a motion for summary judgment. Although we affirmed the chancellor's grant of summary judgment on the fraud issue, we reversed the chancellor's grant of summary judgment on the contract theory, finding that the Searles failed to carry the required burden of establishing the non-existence of genuine issues of material fact, or that they were otherwise entitled to a judgment as a matter of law on Dennis's contract claim. En route to our decision in *Dennis*, we stated:

> At that time [of the summary judgment hearing], [the chancellor] had before him the sworn complaint [footnote omitted here but discussed later] and amended complaint, the admissions made in the answer of the Searles, the deposition of Norman George Dennis taken June 16, 1982, the affidavit of Patty Palmer dated

13

July 9, 1982, the affidavit of Norman George Dennis dated September 11, 1982, the affidavit of Entomologist Stephen R. Leker dated September 9, 1982.

\*\*\*\*\*\*\*\*\*\*\*\*

The trial judge was eminently correct when he granted summary judgment on so much of the complaint as charged the Searles with fraud. From the matters before us there can be no serious doubt but that the Searles had no actual knowledge of the termite infestation at the time they made the contract with Dennis or at the time of the closing. *Dennis offered nothing of any consequence to dispute this proposition or to establish actual fraudulent conduct on the part of the Searles.*

457 So.2d at 943, 944-45 (emphasis added).

¶18. The footnote referenced in the above quote from ***Dennis***, stated:

Under the Mississippi Rules of Civil Procedure, it is not necessary that a complaint be sworn before it may be filed in a chancery court. On the other hand, the fact that this complaint was sworn rendered its allegations eligible for consideration in opposition to the motion for summary judgment. See Rule 56(e), Miss. R. Civ. P.

457 So.2d at 943.

¶19. With all of this in mind, the Stuckeys, just like Dennis, in response to the motion for summary judgment, were required to do more than rest on the mere allegations of their pleadings, sworn or unsworn, and when the Stuckeys chose to do no nothing more in response to Provident's motion for summary judgment, they rolled the dice and lost. In ***Dennis***, we affirmed the chancellor's grant of summary judgment on one of the two issues, notwithstanding the existence of a sworn complaint. Today, we likewise affirm the chancellor's grant of summary judgment, notwithstanding the existence of the Stuckeys' sworn complaint.

¶20. The rules of evidence are certainly critical in our summary judgment procedure, as they specifically govern the assemblage of various forms of evidence attached to the summary

14

judgment motion, or otherwise used in support of a motion for summary judgment. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." M.R.C.P. 56(e). *See also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, Civil 3d § 2738, at 328 (1998). Even when we analyze the Stuckeys' sworn complaint as an affidavit, the complaint's admissibility as substantive evidence fails due to the complainants' lack of personal knowledge concerning any material fact allegation.

¶21. The Stuckeys were afforded the opportunity to respond with proof to Provident's well supported motion for summary judgment. Instead, and to their detriment, they chose to rest on the mere allegations outlined in their sworn complaint. The Stuckeys failed to "go forward" in the face of substantial credible evidence and either contradict Provident's proof or support their own allegations. *Kerr-McGee v. Maranatha Faith Center, Inc.*, 873 So.2d 103, 107 (Miss. 2003). Recently in *Kerr-McGee*, under similar circumstances, we held that, "[a] party must set forth "specific facts" showing that there are indeed genuine issues for trial" *Id*. at 107 (citing *Moore v. Mem'l Hosp. of Gulfport*, 825 So.2d 658, 663 (Miss. 2002)). Today we reiterate, "In order to avoid entry of summary judgment, a party must be diligent and not rest upon allegations or denials in the pleading[s]." *Id*.

¶22. We take this opportunity to emphasize that the parties in today's case were guided in their conduct not only by our rules of civil procedure, and our legion of cases addressing Rule

15

56 procedure, but also by a very thorough scheduling order entered by the chancellor. In that scheduling order, the chancellor specifically ordered that the Stuckeys "shall file a written response to all motions filed prior to or on April 30, 2003 on or before June 15, 2003." Provident timely filed its motion for summary judgment on April 30, 2003. Thus, the chancellor's order clearly informed the Stuckeys that they "shall" file a written response to Provident's motion for summary judgment by June 15, 2003. At their peril, the Stuckeys chose to ignore the chancellor's directive.

¶23. In *Bowie v. Montfort Jones Memorial Hospital*, 861 So.2d 1037 (Miss. 2003), we affirmed a circuit judge's grant of summary judgment in a medical malpractice case after the judge struck the plaintiff's expert designation which had been untimely filed in violation of the judge's scheduling order. In so holding, we stated:

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. (Citations omitted).
> 
> \*\*\*\*\*\*\*\*\*\*\*\*
> 
> While the end result in today's case may appear to be harsh, litigants must understand that there is an obligation to timely comply with the orders of our trial courts.......[T]he parties must take seriously their duty to comply with court orders.

861 So.2d at 1042-43.

¶24. Although the Stuckeys were not thrown out of court for their failure to comply with the chancellor's scheduling order, and although under certain circumstances, the Stuckeys may

16

have survived Provident's summary judgment motion regardless of the fact that they failed to respond to the motion in violation of the chancellor's scheduling order, the Stuckeys chose at their peril not to heed the provisions of Rule 56(e) or the chancellor's scheduling order. Instead they chose to rest on the mere allegations of their sworn complaint, evidently on the mistaken belief that they would survive the summary judgment motion simply because they had signed their original complaint under oath.[5]

¶25. For the reasons stated, we find that the chancellor did not err in his grant of summary judgment in favor of Provident; however, notwithstanding our disposition of this first issue, we will proceed below to address the more specific issue of whether Provident was a holder in due course.

## II. WHETHER THE CHANCELLOR CORRECTLY FOUND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING PROVIDENT'S STATUS AS A HOLDER IN DUE COURSE.

¶26. The applicable statute provides that a holder of an instrument is a holder in due course if:

(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) [t]he holder took the instrument (I) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that

---

[5]Part of the relief requested by the Stuckeys is that the case be reversed and remanded to allow them "discovery and a trial on the issues raised." However, again in referring to the chancellor's scheduling order, the Stuckeys were allowed from January 28, 2003, until December 2, 2003, to complete discovery – almost a year. We emphasize again, as we did in *Bowie*, that attorneys and parties must take seriously the deadlines established in the pre-trial orders entered by our trial courts. Attorneys and parties should not complain about the consequences when they consciously fail to adhere to our trial judges' orders.

there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 75-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 75-3-305(a).

Miss. Code Ann. § 75-3-302(a) (Rev. 2002).

¶27. The Legislature has defined what is contemplated above when it refers to "a defense or claim in recoupment" in part (vi):

> (a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:
>
> (1) A defense of the obligor based on (I) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;
>
> (2) A defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and
>
> (3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

Miss. Code Ann. § 75-3-305(a) (Rev. 2002).

¶28. Provident has produced uncontested evidence and has expressly documented the fact that it purchased the rights to the Stuckeys' loan for value, in good faith, without notice of uncured default and without notice of impropriety. In appraising the evidence presented to him on Provident's motion, the chancellor's findings were as follows:

18

> Provident is the current holder of the [Stuckeys'] Promissory Note and Deed of Trust. Provident was unaware of any of the allegations raised in this lawsuit when it bought the [Stuckeys'] loan after closing. Therefore, Provident is a holder in due course of the subject Promissory Note and Deed of Trust. All claims made against Provident are based solely upon unsupported theories of vicarious liability for the allegedly wrongful acts of unrelated co-defendants. None of the co-defendants were agents of Provident and therefore Provident is a bona fide purchaser in good faith and for value and is entitled to all the protections accorded to holders in due course.

¶29. In the face of Provident's motion and its attached supporting outside evidence, the Stuckeys failed to advance their case. Moreover, the Stuckeys decided to rest on the mere allegations contained in their sworn complaint, and conspicuously chose to forgo their opportunity to present evidence of a relationship between Provident and SMC. The Stuckeys have presented no argument as to why summary judgment was not appropriate and offered nothing for the chancellor to consider in making his summary judgment determination. In his order granting summary judgment, the chancellor accurately appraised the legal sufficiency of the Stuckeys' suit:

> In the matter at hand, [the Stuckeys] have not provided any specific facts which show that a genuine issue remains for trial as to Provident. [The Stuckeys] assert a claim against Provident based upon vicarious liability, but have provided absolutely no factual basis for such allegations. Mere allegations are insufficient to survive a motion for summary judgment.

¶30. In this case, the chancellor's dismissal of Provident was appropriate as nothing in the record evidences that Provident was in collusion with SMC. Moreover, there is no genuine issue of material fact as to Provident's status as a holder in due course. Under Mississippi law and as a holder in due course, Provident therefore is immune to any claim of impropriety against SMC, its predecessor in interest, and was properly dismissed from this suit.

19

## CONCLUSION

¶31. The chancellor in today's case entered a very thorough order granting summary judgment followed by a final judgment consistent with the order and a Rule 54(b) certification. For the reasons stated, the chancellor quite appropriately applied the Rule 56 criteria and our case law in reaching the inescapable conclusion that Provident was entitled to a summary judgment as a matter of law. Thus, we affirm the final judgment dismissing the Stuckeys' claims against Provident as entered by the Chancery Court of the First Judicial District of Hinds County.

¶32. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**