IRVING, J.,
 

 for the Court:
 

 ¶ 1. After her employment with Wesley Health System, LLC was terminated, Diane Smith sued Wesley Health in the Lamar County Circuit Court, alleging breach of contract and defamation. Wesley Health filed a motion for summary judgment, which the circuit court granted, finding that Smith was an at-will employee and that she had failed to prove that Wesley Health had defamed her. Feeling aggrieved, Smith appeals and asserts that the circuit court erred by granting Wesley Health’s motion for summary judgment.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Smith began working as a registered nurse in the labor-and-delivery unit at Wesley Medical Center on November 28, 2005. The incident that led to Smith’s termination occurred on September 26, 2006. Smith testified via deposition that another registered nurse, Ashlee Flynt, asked Smith if she would monitor one of Flynt’s patients while Flynt went to get dinner. According to Smith, Flynt specifically asked her if she would “watch [her] strip.” Smith testified that she interpreted that to mean that Flynt wanted her to monitor the patient’s fetal-monitoring strip. Smith explained that Flynt left before she could tell Flynt that she was too busy to accept responsibility for Flynt’s patient. Smith admitted that she failed to inform anyone that Flynt’s patient needed to be monitored. As a result, the patient was not monitored while Flynt was away from the hospital. At some point while Flynt was away, the fetus went into distress and died shortly thereafter. Although Smith admits that she failed to seek assistance from another nurse when she was unable to monitor Flynt’s patient, she alleges that she is not responsible for the fetus’s death because “[t]he fetus had already become distressed before Ms. Flynt left the unit and died either before or shortly after she left.”
 

 ¶ 4. Nevertheless, as noted, Smith was terminated. She contested her termination using Wesley Health’s internal grievance procedure. Failing to get relief, Smith filed a complaint in the circuit court. In her complaint, Smith asserted that she was under contract with Wesley Health and that it breached the contract by terminating her without cause and by failing to fulfill its duty of good faith and fair dealing. She also claimed that, per the terms of her agreement with Wesley Health, she was entitled to a $3,000 bonus.
 
 [1]
 
 Smith
 
 *744
 
 further alleged that several of Wesley Health’s employees defamed her by informing the parents of the deceased fetus that Smith was responsible for the fetus’s death. The circuit court found no merit to Smith’s claims. It is from that decision that she now appeals.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 5. Our standard of review for summary judgments is well settled:
 

 The standard of review of a trial court’s grant of a summary[-]judgment motion is de novo.
 
 Miller v. Meeks,
 
 762 So.2d 302, 304 [ (¶ 3) ] (Miss.2000) (citing
 
 Short v. Columbus Rubber & Gasket Co.,
 
 535 So.2d 61, 63 (Miss.1988)). Accordingly, [an appellate court] must employ a factual review tantamount to that of the trial court when considering evidentiary matters in the record.
 
 Aetna Cas. & Sur. Co. v. Berry,
 
 669 So.2d 56, 70 (Miss.1996). By design, the threshold for summary judgment is high and requires that “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Miss. R. Civ. P. 56(c). “If any triable facts exist, the lower court’s grant of a summary judgment will be reversed; otherwise the decision will be affirmed.”
 
 Miller,
 
 762 So.2d at 304 [ (¶ 3) ](citing
 
 Brown v. Credit Ctr., Inc.,
 
 444 So.2d 358, 362 (Miss.1983)). “When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings[;] his response must set forth specific facts showing that there is a genuine issue for trial.
 
 Id.
 
 If he does not so respond, summary judgment, if appropriate, shall be entered against him.”
 
 Id.
 

 Stuckey v. The Provident Bank,
 
 912 So.2d 859, 864 (¶ 8) (Miss.2005).
 

 ¶ 6. The circuit court found that Smith “failed to raise a genuine issue of material fact that she was anything other than an at-will employee.” Specifically, the circuit court found that “[t]here is no evidence in the record that Smith was a party to a written contract of employment signed by both her and the Chief Executive of Wesley.” The circuit court based its ruling on documents that Smith had signed upon her employment with Wesley Health. For example, Smith’s employment application reads as follows: “I understand that my employment and compensation can be terminated with or without notice at anytime [sic] at the option of [Wesley Health] or myself.
 
 Nothing in this application of employment should be construed to constitute a contract of employment between [Wesley Health and myself] ....
 
 ” (Emphasis added). Smith also signed an acknowledgment card and receipt for an employee handbook which stated, among other things:
 

 The purpose of this Handbook is to provide employees of this facility with general information regarding the personnel guidelines that the facility attempts to follow in most cases, but
 
 NEITHER THIS HANDBOOK NOR ANY PROVISION OF THIS HANDBOOK OR IN
 
 
 *745
 

 OTHER PERSONNEL POLICIES AND PROCEDURES IS AN EMPLOYMENT CONTRACT OR ANY OTHER TYPE OF CONTRACT.
 

 ALL EMPLOYEES ARE EMPLOYED FOR AN INDEFINITE TERM AND EMPLOYMENT MAY BE TERMINATED WITHOUT CAUSE AT ANY TIME, AT THE WILL OF EITHER THE EMPLOYEE OR THE FACILITY.
 
 This status can only be altered by a written contract of employment, which is specific as to all terms and is signed by both the employee and the Chief Executive Officer of this [facility.
 

 (Emphasis added).
 

 ¶ 7. Smith contends that the following language in a document entitled “Recruitment Sign[-]on Bonus” negates the language contained on the acknowledgment card:
 

 Wesley Medical Center will pay any qualified candidate a sign[-]on bonus upon accepting a full-time or part-time assignment with Wesley Medical Center to fill a “Critical Staffing Need” position. The following are the guidelines for payment and repayment of [a] sign-on bonus at Wesley Medical Center:
 

 Qualifying Amount: $6,000.00
 

 4.1.1
 
 Acceptance
 
 Any qualified candidate who accepts a sign[-]on bonus at Wesley Medical Center agrees to the terms and conditions of the sign[-]on bonus agreement.
 

 4.1.2
 
 Terms and Conditions
 

 4.1.2(A). The qualified candidate agrees to 12 months of employment at Wesley Medical Center as a full[-]time or part[-]time employee as agreed upon by their [sic] offer of employment by the Human Resources Department.
 

 4.1.2(B). The payment of the sign[-]on bonus is as follows:
 

 The first payment or [sic] the sign[-]on bonus, less taxes, will be paid after the employees [sic] [90th] day of employment at Wesley Medical Center. Payment will be in conjunction with the normal payroll cycle of Wesley Medical Center[.]
 

 The second payment of the sign[-]on bonus, less taxes, will be paid after 12 months of employment at Wesley Medical Center. Payment will be in conjunction with the normal payroll cycle of Wesley Medical Center[.]
 

 4.1.2(C). Repayment of bonus. If an employee should terminate for whatever reason or change their [sic] status of employment to Per Diem (PRN) with in [sic] their [sic] 12-month time frame, then they [sic] must repay the sign[-]on bonus to Wesley Medical Center.
 

 ¶ 8. Smith argues that the language in 4.1.2(A) that “[t]he qualified candidate agrees to 12 months of employment at Wesley Medical Center” should be interpreted to mean that she had a contract with Wesley Health to be under its employ for a fixed twelve-month term. We disagree. Per the language in the sign-on agreement, Wesley Health simply agreed to pay Smith $6,000 if she remained under its employ for twelve months — nothing more, nothing less. Moreover, section 4.1.2(C) suggests that Smith was an at-will employee who could be terminated for “whatever reason.”
 

 ¶ 9. Smith acknowledged in her deposition that, pursuant to the employee handbook, employees who commit “critical offenses” can be terminated. She also agreed that critical offenses are defined as “[a]cts or conduct detrimental to patient care, customer service, or facility operations.” As noted, Smith admitted that she failed to monitor Flynt’s patient after Flynt asked her to do so and also declined to notify anyone else that the patient need
 
 *746
 
 ed to be monitored. It is reasonable to conclude that the failure to monitor a patient that results in the death of a fetus would be considered a critical offense.
 

 ¶ 10. Finally, Smith argues that if this Court were to find that the sign-on bonus alone is not a valid contract, we should then find that it memorializes an oral agreement that she had with Wesley Health. We decline to address this issue, as it was not raised in the circuit court. It is well settled that “[an appellate court] will not review on appeal those issues which were not raised in the court below.”
 
 Shaw v. Shaw,
 
 603 So.2d 287, 292 (Miss.1992) (quoting
 
 Estate of Johnson v. Adkins,
 
 513 So.2d 922, 925 (Miss.1987)).
 

 ¶ 11. Smith has failed to raise a genuine issue of material fact to support her breach-of-contract claim. Therefore, we affirm the judgment of the circuit court.
 

 ¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Smith testified that Wesley Health agreed to pay, as a sign-on bonus, a total of $6,000 to employees in two installments of $3,000. The first installment was to be disbursed after the
 
 *744
 
 employee’s ninetieth day of service and the second after the employee had been employed with Wesley Medical for twelve months. Smith argued that she was entitled to the second installment even though she did not make the twelve-month mark because she had worked additional shifts during her tenure at Wesley Medical. She also stated that the director of women’s services at Wesley Health agreed that she was entitled to the second installment of the bonus.