GRIFFIS, P.J.,
for the Court:
¶ 1. Kenneth Fox Sr. appeals the circuit court’s denial of his motion for post-conviction collateral relief (PCCR). We find no error and affirm.
FACTS
¶ 2. Fox’s convictions arose from a history of domestic violence against his ex-girlfriend, Takeda Brack. Brack, Fox, their son, and Brack’s other children lived together at Fox’s home. In August 2008, Fox hit Brack in front of her children. Brack broke up with Fox and moved out of his residence.
¶ 3. On October 31, 2008, Fox followed Brack while she drove from work to an airport parking lot in Tennessee. There, Fox tried to start an argument with her. Fox then punched and kicked Brack. Fox fled the scene by driving through a parking gate. Brack was transported to the hospital by ambulance. Brack’s mother testified that Fox had beaten Brack so badly that she could not recognize her *212 daughter. The record demonstrates the brutality of the assault.
¶ 4. On November 11, 2008, Brack and her brother, Kenneth Coleman, went to a concert in Memphis. Fox knew Brack would be there because he brought the tickets to her that had been mailed to his residence. After the concert, Fox grabbed Brack and asked her about their son and why the police had been searching for him. Brack told Fox to look at her; her eyes still showed evidence of Fox’s assault from eleven days earlier.
¶ 5. Brack drove away, with Coleman in the passenger seat. Fox began to follow Brack’s vehicle. Brack saw a police officer, flagged him down, and told him about Fox’s chase. The officer talked to Fox and then let him go. Later, Brack flagged down a second officer. The second officer told her that there was nothing the police could do, and she should take a different route home to Mississippi.
¶ 6. Brack and Coleman called Brack’s parents and told them what had happened. Fox did not follow Brack and Coleman the entire route home. Instead, he waited for them near Brack’s parents’ driveway. Brack drove into her parents’ driveway. Brack saw lights flash and heard a car skidding. Brack drove into her parents’ front yard and drove around a tree. Brack said that Fox hit her vehicle in front of the house. During this part of the incident, one of the vehicles hit a neighbor’s parked vehicle. It was disputed whether Brack or Fox hit the parked vehicle. Fox continued to pursue Brack and Coleman at a high rate of speed.
¶ 7. The chase proceeded down several streets. At one point, with an eighteen-wheeler coming from the opposite direction, Fox drove up to the passenger side of Brack’s vehicle. Brack said Fox then struck the back of her car. Fox said that when he was following Brack, she slammed on her breaks. He then slammed on his breaks and swerved to try to avoid Brack, and that is when their cars collided. Then, Brack’s vehicle turned and rolled, split a power pole, and came to rest upside down. Brack and Coleman were pinned inside Brack’s vehicle. Brack broke two cervical vertebrae. Coleman suffered a sprained neck, a lacerated face, and lacerated hands. Fox continued to drive and fled to Chicago.
¶ 8. According to Brack, Fox threatened different members of her family on the phone after the wreck. Fox had written a letter to Brack’s ex-husband telling him to be ready to get the kids because Brack was going to die.
¶ 9. Fox testified that he did not intentionally run Brack and Coleman off the road, but that he had operated his vehicle recklessly. Fox testified, “It was my fault.” Fox stated that he fled because he feared a maximum sentence due to his previous convictions.
¶ 10. On September 2, 2009, Fox pled guilty to two counts of aggravated assault and one count of leaving the scene of an accident. On the first count of aggravated assault, Fox was sentenced to serve twenty years. On the second count of aggravated assault, Fox was sentenced to twenty years of post-release supervision, five years reporting and fifteen years non-reporting, to run consecutively to the sentences for the other two counts. For leaving the scene of an accident, Fox was sentenced to serve five years, to be served concurrently with the sentence for the first count of aggravated assault.
¶ 11. On April 4, 2011, Fox filed his lengthy PCCR motion. His motion included numerous exhibits. On August 15, 2011, Fox filed a motion for summary judgment. Fox also filed several motions about the State’s failure to respond and *213 about his opposition to orders that granted the State more time to respond. On January 26, 2012, the circuit court entered an order that denied Fox’s motions for summary judgment and PCCR.
STANDARD OF REVIEW
¶ 12. The denial of a motion for PCCR will not be reversed absent a finding that the circuit court’s decision was clearly erroneous. Smith v. State, 806 So.2d 1148, 1150 (¶ 3) (Miss.Ct.App.2002). However, when reviewing issues of law, the standard of review is de novo. Brown v. State, 781 So.2d 595, 598 (¶ 6) (Miss.1999).
ANALYSIS
¶ 13. Fox raises fifteen issues on appeal. We address Fox’s issues topically and not in the numerical order used in Fox’s brief.

1. Summary Judgment Motion: Lack of State’s Response and Default Judgment

¶ 14. Fox argues that the circuit court erred when it did not order the State to respond to his motion for summary judgment. Fox also argues that the circuit court erred when it did not order a default judgment against the State for its failure to respond.
¶ 15. A motion for PCCR is classified as a civil, rather than a criminal, action. The Mississippi Uniform Post-Conviction Collateral Relief Act (UP-CCRA) provides for the use of a summary judgment. Mississippi Code Annotated section 99-39-19(2) (Rev.2007) provides: “The court may grant a motion by either party for summary judgment when it appears from the record that there is no genuine issue of material fact and the mov-ant is entitled to [a] judgment as a matter of law.” The Mississippi Rules of Civil Procedure supplement the UPCCRA, and section 99-39-19 “authoriz[es][the] summary judgment procedure found in Rule 56.” Milam v. State, 578 So.2d 272, 273 n. 1 (Miss.1991).
¶ 16. Fox’s argument centers around the part of Mississippi Rule of Civil Procedure 56(e) that provides:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
¶ 17. Rule 56(e) does “not mandate a grant of summary judgment if there is no response to the summary judgment motion.” Stuckey v. The Provident Bank, 912 So.2d 859, 867 (¶ 15) (Miss.2005). In accordance with Rule 56 and case law, trial judges have “denied summary judgment motions even though the non-moving party failed to respond to the motion. The non-moving party merely failed to respond at his/her peril, and survived the motion anyway.” Stuckey, 912 So.2d at 867 (¶ 15).
¶ 18. Additionally, Fox’s argument ignores the distinction between summary judgment motions in PCCR actions and in ordinary civil actions. PCCR actions generally start with records that include actual evidence that created a genuine issue of material fact. See Turner v. State, 590 So.2d 871, 875 (Miss.1991). Whereas, ordinary civil actions begin with notice pleadings, and summary-judgment motions in such actions have attached affidavits. With motions for summary judgment in PCCR actions, there is evidence already in the record. Here, the evidence in the *214 record included the testimony of Fox, Brack, Coleman, and Brack’s parents.
¶ 19. Fox’s motion for summary judgment was not “made and supported as provided in” Rule 56. The record does not support a finding that there were no genuine issues of material fact and that Fox was entitled to a judgment as a matter of law. The State was not required to respond to the summary-judgment motion.
¶ 20. The circuit court did not err when it did not order the State to respond to Fox’s motion for summary judgment and when it did not order a default judgment against the State for not responding. We find these two issues have no merit.

2. Validity of Indictment

¶ 21. Fox argues that the circuit court erred when it determined the indictment was valid under Mississippi Code Annotated section 99-7-9 (Supp.2012). Fox argues the indictment is invalid because it has a pre-signed, photocopied signature of the circuit clerk; the signature is partially forged; and it is not accompanied by a sworn affidavit of the grand-jury foreman.
¶ 22. We review de novo challenges to the legal sufficiency of an indictment. Beal v. State, 86 So.3d 887, 891 (¶ 9) (Miss.2012). In Brooks v. State, 573 So.2d 1350, 1353-54 (Miss.1990), the PCCR petitioner argued that his indictments were defective because they did not include an affidavit from the grand-jury foreman. This is the same as Fox’s argument. The supreme court held that any defects alleged in the indictments were “technical and non-jurisdictional deficiencies that were waived when [the petitioner] failed to timely raise them in the trial court.” Id. at 1354.
¶ 23. The defects that Fox complains of are procedural in nature and are non-jurisdictional defects. A guilty plea waives all non-jurisdictional defects in an indictment. Reeder v. State, 783 So.2d 711, 720 (¶ 36) (Miss.2001). With his guilty plea, Fox waived any non-jurisdictional defects in his indictment. Therefore, we find this issue has no merit.

3. Right to Indictment by a Grand Jury

¶ 24. Fox argues that the indictment as framed abrogated his right to indictment by a grand jury and allowed the State to “roam at large” in its theory of the offense. Fox argues that the indictment does not state the specific location of the incident and whether the victims were pedestrians or vehicle occupants. In this argument, Fox implicitly claims he was charged by the State, not the grand jury.
¶ 25. “There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to” the appellate court. Branch v. State, 347 So.2d 957, 958 (Miss.1977).
¶ 26. Fox has not presented evidence that the facts in the indictment were not the same as the State’s theory. The indictment stated the date of the incident, the victims, the elements of each count, and the statutes Fox violated. Fox himself discussed the facts at length at his sentencing hearing. In the State’s factual basis for the charges, it stated that Fox drove his vehicle into a vehicle occupied by the victims. At the time of the hearing, Fox did not dispute the information.
¶ 27. Fox likens his indictment to the defective indictment in United States v. Tomasetta, 429 F.2d 978, 979 (1st Cir.1970). Besides the fact that Tomasetta is not binding authority for this Court, the indictment in Tomasetta is dissimilar because it failed to: name the victim, specify *215 the location of the offense, specify how the extortionate threats there were communicated, and allege federal jurisdiction. Fox’s indictment named Brack and Coleman as victims and alleged that Fox had used an automobile to perpetrate the charged crimes.
¶28. If Fox was not informed of the location of the incident and whether the victims were pedestrians, he did not demonstrate any uncertainty as to these facts during his testimony at the sentencing hearing. Additionally, as stated above, Fox waived any non-jurisdictional defects in the indictment when he pled guilty. We find these issues have no merit.

U- Sufficiency of Indictment

¶29. Fox argues that the indictment did not sufficiently inform him of what evidence to be prepared to meet. He argues the indictment did not inform the circuit court of the facts. Fox argues that count three, leaving the scene of an accident, was unconstitutionally vague because it did not state a specific injury and subsection under the applicable statute. Fox also argues that all the counts were unconstitutionally vague because the indictment did not provide information so that Fox could plead double jeopardy.
¶ 30. The Mississippi Supreme Court has held that “when facts constituting a criminal offense may fall within either of two or more statutes or there is substantial doubt as to which applies, the statute imposing the lesser punishment shall be applied.” Bourdeaux v. State, 412 So.2d 241, 243 (Miss.1982). Fox argues that since neither the misdemeanor nor felony subsection of the relevant statute is listed in the indictment, the indictment is vague.
¶ 31. We find it clear from the indictment that Fox was charged with the felony of leaving the scene of the accident and that he was not charged under the misdemeanor subsection of the statute. Like in Pollard v. State, 932 So.2d 82, 89 (¶ 20) (Miss.Ct.App.2006), the inclusion in Fox’s indictment of the phrase “wilfully, unlawfully, and feloniously” made it apparent that Fox was charged under the felony subsection of Mississippi Code Annotated section 63-3-401 (Supp.2012).
¶ 32. Therefore, Fox’s indictment was sufficient and was not vague; his sentence under the felony subsection of the statute was not erroneous. As for the two counts of aggravated assault, the record reflects the indictment contained all the elements of the crimes charged and was not vague. When the elements were read to Fox, Fox did not disagree that he had committed the offenses. Again, Fox’s guilty plea waived all non-jurisdictional defects in his indictment. See Reeder, 783 So.2d at 720 (¶ 36). Accordingly, these issues are without merit.

5. Suppression of Favorable Evidence

¶ 33. Fox argues that the State suppressed favorable material evidence. Specifically, he claims that the State suppressed Brack’s drug and alcohol test results. Fox argues that the evidence does exist. Fox argues a lab report, an “exhibit x,” shows samples were collected to be used for pregnancy tests and other tests relevant to treatment. The record contains no “exhibit x.” Fox argues the result of the proceedings would have been different because of the probability that Brack’s results would have shown that she “was illegally impaired when she wrecked.” Fox also argues that there are differences in investigative reports as to who hit a neighbor’s parked car in the chase.
¶ 34. The record contains a report on Brack with the heading “Alcohol Test In *216 formation.” Under “Type,” it states “none.” Under “Status,” it states “none given.” The same information was under the heading “Drug Test Information.” The report does not indicate from where the report originated.
¶ 35. The supreme court has set forth a four-part test to determine whether a Brady[1] violation occurred. Havard v. State, 86 So.3d 896, 900 (¶ 12) (Miss.2012). The defendant must prove:
(a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Id. (quoting Manning v. State, 929 So.2d 885, 891 (¶ 15) (Miss.2006)).
¶ 36. In Leavitt v. State, 982 So.2d 981, 990 (¶ 36) (Miss.Ct.App.2008), the appellant argued that the prosecution excluded important evidence from discovery in violation of Brady. However, the appellant failed to provide any evidence that the State had failed to disclose the evidence. Id. The appellant also failed to show how the evidence would have affected his decision to plead guilty, other than providing his own bare allegations. Id. Thus, this Court found that the issue was without merit.
¶ 37. Like Leavitt, Fox has not shown that any of the documents he asserts were suppressed even exist. The record displays no alcohol test was performed. When Fox’s counsel asked the State for alcohol and drug test results, the State responded that no such results existed and that the State had provided all the records provided by the hospital. Additionally, Fox has not shown that such a test would be favorable to him. There is no evidence in the record to support that Brack was under the influence of drugs or alcohol to prompt such a test.
¶ 38. Because Fox has failed to establish the first three elements necessary to show a Brady violation, it is unnecessary for this court to opine as to the fourth. Thus, this issue is without merit.

6. Guilty Plea

¶ 39. Fox argues his guilty plea was involuntary and unintelligent. Fox lists this as issue fourteen. Fox bases part of his argument on a letter he sent to the circuit judge after his guilty plea and before sentencing. Fox stated in the letter that he had no malicious intent and did not ram Brack’s vehicle. Fox argues that the circuit court was required to explain the elements of aggravated assault, but the court only asked if counsel had explained the charges.
¶ 40. A guilty plea is enforceable only if entered voluntarily and intelligently. Myers v. State, 583 So.2d 174, 176-77 (Miss.1991). A plea is voluntary and intelligent when the defendant knows the elements of the charges against him and the consequences of a guilty plea. See Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992). At the plea hearing here, the State read aloud each element of each count.
¶ 41. Great weight may be placed on a defendant’s sworn testimony given at a plea hearing, because “[s]olemn declarations in open court carry a strong presumption of verity.” Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 *217 L.Ed.2d 136 (1977). A defendant faces a “high hurdle in recanting that testimony.” Pevey v. State, 914 So.2d 1287, 1290 (¶ 8) (Miss.Ct.App.2005).
¶ 42. Based on our review of the record of the plea hearing, before Fox entered his plea, the circuit court explained that when a defendant enters a guilty plea, he waives certain rights, challenges, and claims that otherwise may have been available to him at a trial. The only evidence offered by Fox in support of his claim that his guilty plea was involuntary was his own unsupported assertions. The plea colloquy demonstrates that Fox’s guilty plea was voluntary and intelligent.
¶43. Fox’s plea petition contradicts Fox’s argument that his guilty plea was involuntary. “The plea petition was not an oral statement in open court, but it was a sworn document presumptively prepared with an appreciation of its fateful consequences.” Ward v. State, 879 So.2d 452, 455 (¶ 11) (Miss.Ct.App.2003). A plea petition is similar to a sworn statement made before the court and may be used to discredit post-plea allegations. Id. In Fox’s plea petition, he swore that he understood the rights given up by him when he pled guilty. He swore, “I offer my plea of ‘guilty’ freely and voluntarily and of my own accord and with full understanding of all matters set forth in the indictment herein.” Additionally, Fox swore, “I submit that all the elements are proven by the true facts.”
¶ 44. Fox’s arguments completely ignore the testimony that he gave when he pled guilty. The prosecutor stated that the State would be able to show that Fox chased the victims and “eventually struck their vehicle at a high rate of speed.” The circuit court asked Fox if he understood and recalled the events that brought about the charges. Fox answered yes. Fox did not have any disagreements with what the State said it could prove. If Fox disagreed, that moment was the time for Fox to say, “I disagree with what the State said.” He did not disagree then.
¶ 45. Accordingly, based on a thorough review of the record, we find that Fox’s guilty plea was entered voluntarily and intelligently. Therefore, we find this issue is without merit.

7. Ineffective Assistance of Counsel

¶ 46. Fox argues that his counsel was ineffective when he: (1) failed to move to quash the indictment; (2) advised Fox to plead guilty despite the fact that counsel failed to inspect the indictment, lacked the knowledge of the law to make proper objections to the indictment, and advised him to plead guilty before having full notice of the nature of the charges; (3) failed to investigate the State’s alleged suppression of favorable evidence; and (4) failed to investigate selective or malicious prosecution.
¶ 47. To prove ineffective assistance of counsel, Fox must show: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Fox to show both prongs. See McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, Fox must “show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 48. In PCCR cases, “where a party offers only his affidavit, then his *218 ineffective assistance of counsel claim is without merit.” Vielee v. State, 653 So.2d 920, 922 (Miss.1995). As this case involves a guilty plea, Fox must show that, but for counsel’s performance, he would have gone to trial, and the outcome would have been different. See Mitchell v. State, 58 So.3d 59, 62 (¶ 14) (Miss.Ct.App.2011). Fox has made no such showing.
¶ 49. Fox offers only his statements that allege the deficiencies of his counsel. Such allegations directly contradict his statements made under oath. Further, Fox failed to show his counsel prejudiced the result of his case. Fox admitted the factual bases for the charges were correct.' Fox testified under oath that he was satisfied with the legal services of his counsel and that he believed his attorney had properly advised him before he pled guilty. Fox has not proven an ineffective-assistance-of-counsel claim as to the advice he received to plead guilty.
¶ 50. Fox argues his counsel was ineffective when he did not move to quash the indictment. However, as previously discussed, Fox’s indictment was sufficient and was not vague. Thus, Fox’s counsel was not deficient in not moving to quash the indictment. Additionally, even if the indictment had been defective, it would have been curable by amendment. See Brandau v. State, 662 So.2d 1051, 1054 (Miss.1995). Again, a guilty plea waives all non-jurisdictional defects in the indictment. See Reeder, 783 So.2d at 720 (¶ 36). Even if we assumed Fox’s counsel erred in not moving to quash the indictment, Fox has not shown prejudice. Thus, this issue has no merit.
¶ 51. Fox argues his counsel failed to investigate selective or malicious prosecution and failed to investigate the State’s alleged suppression of favorable evidence. For failure to investigate to be ineffective assistance of counsel, Fox “must state with particularity what the investigation would have revealed and ... how it would have altered the outcome.” Triplett v. State, 840 So.2d 727, 731 (¶ 11) (Miss.Ct.App.2002).
¶52. Prosecutors have wide discretion in their decisions of what actions to prosecute. Hansen v. State, 592 So.2d 114, 143 (Miss.1991). With selective prosecution, Fox carries the burden of showing that he was arbitrarily or unconstitutionally targeted. See id. A selective-prosecution claim is an independent assertion of misconduct by a prosecutor and “not a defense on the merits to the criminal charge itself.” United States v. Armstrong, 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). There must be clear evidence to rebut the presumption that the prosecutor acted lawfully. Id. at 464, 116 S.Ct. 1480. Fox has failed to meet this burden or to show how an investigation into the prosecutor’s alleged selective prosecution would have altered the outcome of his case. This issue has no merit.
¶ 53. Fox claims his counsel did not investigate Brack’s alleged alcohol and drug tests from the hospital. However, the record demonstrates that Fox’s counsel wrote to the prosecutor on August 6, 2009:
In reviewing Ms. Brack’s medical records from the Regional Medical Center, no records were produced regarding alcohol and/or drug screens. I have never seen records from The Med in which these results were not provided. Please confirm that the records you provided are the complete records from The Med. Please contact me if you have any questions.
The State responded that no such drug and alcohol screen existed. Also, Fox admitted in his PCCR petition that his coun *219 sel had informed him of this fact. As previously discussed, there is no evidence in the record that the results ever existed. Fox has not shown that his counsel’s pursuit of the results was deficient performance or that he was prejudiced. Accordingly, this issue is without merit.
¶ 54. Because this Court finds that all fifteen of the issues Fox raises on appeal are without merit, we affirm the circuit court’s denial of Fox’s PCCR motion.
¶ 55. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY DENYING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.
CARLTON, J., CONCURS IN RESULT ONLY.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).