# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00323-COA

**DAVID PAUL ANDERSON A/K/A DAVID ANDERSON**                           APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                                      APPELLEE

DATE OF JUDGMENT:          02/21/2014
TRIAL JUDGE:                        HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:   HARRISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     THOMAS C. LEVIDIOTIS
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                                     BY: SCOTT STUART
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:    DENIED MOTION FOR POST-
                                     CONVICTION RELIEF
DISPOSITION:                      AFFIRMED: 03/31/2015
MOTION FOR REHEARING FILED:  04/08/2015: DENIED;
                                     AFFIRMED: 08/18/2015
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

**MODIFIED OPINION ON MOTION FOR REHEARING**

¶1.     The motion for rehearing is denied. The previous opinion is withdrawn, and this opinion is substituted in its place.

¶2.     David Paul Anderson was convicted of the statutory rape and sexual battery of his eleven-year-old daughter. His convictions and sentences were affirmed on direct appeal. *Anderson v. State*, 62 So. 3d 927 (Miss. 2011). Anderson requested and received leave of the Mississippi Supreme Court to file a motion for post-conviction relief to advance his

claims that he lacked the mental capacity to commit the crimes or to assist in his own defense. Ultimately, on Anderson's own impetus, the circuit court considered the motion on the merits without an evidentiary hearing. It denied relief, and Anderson appeals from that judgment. We find no error and affirm.

## DISCUSSION

### 1. Nature of the Judgment / Standard of Review

¶3. Anderson filed his motion for post-conviction relief with a number of supporting affidavits and other documents. He was granted an evidentiary hearing, but it was continued so he could be examined by Dr. Bethany Spiller, a psychologist of his choosing. The examination apparently was conducted, but then activity in the case ceased. After about a year had passed, Anderson's attorney filed a "Notice to Court Pursuant to [Mississippi Rule of Appellate Procedure] 15(a)," complaining of difficulty scheduling the evidentiary hearing and noting that the State had moved for summary judgment in its response to Anderson's motion. Anderson's "notice" stated that both parties were amenable to deciding the case on the record. He provided two orders, one granting and the other denying relief. The order denying relief, which was entered by the court, did not explicitly state that it was granting summary judgment, but it is apparent that this is what the circuit court did.

¶4. Post-conviction relief actions are civil proceedings, and summary judgment is explicitly provided for in the Mississippi Uniform Post-Conviction Collateral Relief Act. *See* Miss. Code Ann. § 99-39-19 (Supp. 2014); *Milam v. State*, 578 So. 2d 272, 273 n.1 (Miss.

1991); *Fox v. State*, 129 So. 3d 208, 213 (¶15) (Miss. Ct. App. 2013). The fact that the supreme court has granted leave to file a PCR motion in the trial court does not make the petition, once filed, immune to summary judgment. *Porter v. State*, 963 So. 2d 1225, 1228 (¶9) (Miss. Ct. App. 2007).

¶5. "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). In a PCR case, the court should also consider the record of the underlying judgment that is the subject of the PCR motion. *See* Miss. Code Ann. § 99-39-11(1) (Supp. 2014).

¶6. "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10). "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Furthermore:

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987).

3

## 2. Merits of the Summary Judgment

¶7.     Anderson contends that he suffers from "serious mental or cognitive impairment" such that he was incompetent to stand trial and was legally insane at the time he committed the alleged offenses, i.e., he was unable to tell the difference between right and wrong.  He also claims ineffective assistance of counsel based on his trial counsel's failure to notice Anderson's alleged incompetence to stand trial and counsel's failure to pursue an insanity defense.

¶8.     Anderson's claim is founded almost entirely on a childhood IQ test conducted in 1974, when Anderson was about fourteen years old.  The test was administered by Dr. Thomas Graf, a psychologist.  The test found that Anderson had a verbal IQ of 63, a performance IQ of 80, and a full-scale IQ of 69, a finding consistent with mental retardation.  Dr. Graf noted that a prior test had reached similar results.  He also noted that Anderson had been in special education for four years, and he recommended that Anderson continue there. However, in Dr. Graf's opinion, the disconnect between the performance and verbal IQs appeared to be the result of a speech impediment.  Dr. Graf recommended speech therapy and surgery to correct the physical cause of the speech impediment.

¶9.     Anderson also offered several lay affidavits – one from his mother, and two from attorneys who had represented him after the trial.  His mother noted that, as a child, Anderson had attended special education classes and was diagnosed as mentally retarded.  In her opinion, he appeared to be able to communicate effectively in the trial record only because

4

he had been coached by his attorneys.

¶10.   Anderson's attorney on direct appeal, Lelani Hill, had unsuccessfully moved for a psychological examination prior to submitting Anderson's principal brief on appeal. She submitted an affidavit stating that she had "met with [Anderson] several times[,] and his capacity appears to be diminished to such an extent that he may not have the ability to competently assist in his appeal or any other hearing or trial that may result from his appeal." She added that she had "concerns as to whether . . . Anderson was competent at the time of trial . . . and whether . . . he was unable to understand right from wrong at the time the alleged acts occurred." Anderson's attorney in the PCR motion, Tom Levidiotis, expressed similar concerns. Levidiotis  bolstered his claims by noting that he had attended at least one semester of medical school, but he admitted that he is "not a medical expert" and "should not presume to offer an opinion regarding [Anderson's] competency."

¶11.   Anderson also notes that his attorney at trial stated prior to sentencing that Anderson had a "special IQ."  At the sentencing hearing, Anderson presented several witnesses who testified that he was mentally retarded, including family members and the former principal of a school for physically and mentally handicapped people.  Anderson also points out that a previous attorney had noted that she read an employment contract out loud to Anderson.

¶12.   Finally, Anderson offered the affidavits of two experts.  Dr. Thomas Lombardo, a psychologist, stated that insanity or incapacity was possible, but he spoke in terms of "may" and "might."  He "would not presume to attempt to draw any particular conclusions from the

5

data presented with respect to this subject's particular abilities." Dr. Spiller's affidavit was similar; she said it was "reasonable to assume" that Anderson is mentally retarded, but the "use of abbreviated versions of the [IQ tests administered to Anderson in the early 1970s,] coupled with the absence of effort testing during the assessments[,] make[s] it difficult to speak with certainty about specificities of the defendant's cognitive abilities and limitations." She concluded: "New testing would be needed to ascertain reliable and valid data regarding Mr. Anderson's verbal comprehension, abstract reasoning, and judgment." "After such a comprehensive evaluation, I will be prepared to render such an opinion with a reasonable degree of professional certainty . . . ."

¶13. Apparently, Dr. Spiller did examine Anderson after the PCR motion was filed, but her subsequent findings were never made part of the record.

¶14. A defendant is presumed to be sane as well as competent to stand trial. *Nolan v. State*, 61 So. 3d 887, 895 (¶36) (Miss. 2011); *Rice v. State*, 815 So. 2d 1227, 1229 (¶11) (Miss. Ct. App. 2001). Likewise, Anderson bore the burden of proving that his trial counsel was constitutionally ineffective. *Havard v. State*, 94 So. 3d 229, 239-40 (¶34) (Miss. 2012).

¶15. Even considering all of the evidence Anderson has offered in the light most favorable to him, it is apparent that he failed to produce evidence sufficient to create a genuine issue of material fact on any of his claims. Neither of Anderson's experts found that he was legally insane or incompetent to stand trial. Instead, each stated authoritatively that nothing could be reliably concluded from the evidence available to them. To defeat summary

6

judgment, Anderson was required to produce sufficient evidence such that a fair-minded fact-finder could reach a favorable verdict on his claims. *Lavinia v. Waldrup*, 903 So. 2d 745, 748 (¶10) (Miss. 2005). He could not do this with "mere possibilities." *Estate of Gibson v. Magnolia Healthcare Inc.*, 91 So. 3d 616, 625 (¶22) (Miss. 2012).

¶16. Having conducted a de novo review of the record, we are satisfied that the trial court properly granted summary judgment on all of Anderson's claims.

### 3. Findings of Fact

¶17. Anderson next complains that the circuit court erred by not explaining its reasons for granting summary judgment. Under Mississippi law, however, it was not required to do so. *Harmon v. Regions Bank*, 961 So. 2d 693, 700 (¶24) (Miss. 2007). Anderson presents no authority to the contrary. This contention is without merit.

### 4. Sentence

¶18. Finally, Anderson challenges his sentences, which he alleges are excessive in violation of the United States Constitution. Anderson received two sentences of life imprisonment, one for each conviction of statutory rape, and a thirty-year sentence for sexual battery. All of the sentences were ordered to be served concurrently.

¶19. Although the supreme court gave Anderson permission to file a PCR motion raising this issue, it could have been raised in his direct appeal, and he has presented no significant new evidence bearing on the issue. We are of the opinion that it is procedurally barred and barred by res judicata. *See Rice v. State*, 134 So. 3d 292, 300 (¶21) (Miss. 2014).

¶20.   Notwithstanding the procedural bars, Anderson's claim is without merit. Our supreme court has stated that it generally will not challenge the discretion of the trial court in sentencing as long as the sentence falls within the statutory limits. *Mosley v. State*, 104 So. 3d 839, 841 (¶10) (Miss. 2012) (citation omitted). Only a sentence that leads to an inference of "gross disproportionality" is subject to attack on Eighth Amendment grounds, in which case we would apply the three-pronged test set forth in *Solem v. Helm*, 463 U.S. 277, 290-91 (1983) (overruled in part by *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)). *Mosley*, 104 So. 3d at 841 (¶10).

¶21.   Responding to similar arguments in another case, this Court observed that "[t]he rape of one's own eleven-year-old daughter is a particularly vile and heinous crime." *Powell v. State*, 49 So. 3d 166, 174 (¶26) (Miss. Ct. App. 2010).

¶22.   At the sentencing hearing, the trial court was presented with Anderson's evidence and arguments regarding his diminished capacity, and it considered them; but it also heard contradictory evidence – including but not limited to Anderson's efforts to conceal the sexual activity with his daughter, his history of steady employment, his lack of a criminal record and absence of childhood discipline problems, his marriages, and the statements of numerous witnesses at the sentencing that Anderson knew right from wrong. The trial judge probed witnesses at the sentencing hearing on this issue. Before pronouncing the sentence, she found on the record that Anderson "fully understood what [he] was doing at that time" and that he "knew that what [he was] doing was wrong."

¶23. We find no inference of gross disproportionality in Anderson's sentences. This issue is without merit.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, JAMES AND WILSON, JJ., CONCUR.**