# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00401-SCT

*CALEB CORROTHERS a/k/a CALEB
CARROTHERS a/k/a CALBE CAROTHER a/k/a
CALEB L. CARROTHERS a/k/a CALEB
COROTHERS a/k/a CALAB CAROTHES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/2023 |
| TRIAL JUDGE: | HON. GRADY FRANKLIN TOLLISON, III |
| TRIAL COURT ATTORNEYS: | TREASURE R. TYSON |
| | SUE ANN WERRE |
| | CHARLES R. WILBANKS, JR. |
| | BRANDON KYLE MALONE |
| | PARKER ALAN PROCTOR, JR. |
| | CANDICE LEIGH RUCKER |
| | BRAD ALAN SMITH |
| | BENJAMIN HUMPHREYS McGEE |
| | MATTHEW ROBERT DOWD |
| | KRISSY CASEY NOBILE |
| | LADONNA C. HOLLAND |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: KRISSY CASEY NOBILE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BRAD ALAN SMITH |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | AFFIRMED - 12/05/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    Caleb Corrothers brutally attacked Tonya Clark's family, wounding her and killing both her husband and her son. A jury convicted Corrothers of two counts of capital murder and one count of aggravated assault. The jury sentenced Corrothers to death for the capital murders and to life for the aggravated assault. Corrothers appealed, and this Court affirmed his convictions and death sentence.[1]

¶2.    Corrothers then petitioned this Court for permission to seek post-conviction relief, raising multiple issues. We denied Corrothers's requested relief on each claim except one—his allegation that an unnamed female juror had improperly communicated with Clark in the courtroom.[2] We granted Corrothers a hearing on the juror-bias claim.[3]

¶3.    Six years later, the trial court held an evidentiary hearing in which Corrothers presented two witnesses—his mother and his cousin. Both testified they saw the same heavyset female juror mouth "we got it" to Clark as the jury returned to the courtroom after unanimously voting to sentence Corrothers to death. But the trial judge did not believe the two witnesses. He determined they were not credible, given their personal interest in Corrothers's case. Further, Corrothers failed to present any other witnesses to the alleged gesture. He did not even call the juror in question or Clark. Because Corrothers failed to prove improper juror communication, the trial court denied him post-conviction relief.

¶4.    Corrothers appeals that decision. He asserts that the trial judge essentially deemed his

---

[1] *Corrothers v. State (Corrothers I)*, 148 So. 3d 278 (Miss. 2014).

[2] *Corrothers v. State (Corrothers III)*, 255 So. 3d 99 (Miss. 2017).

[3] *Id.* at 111-12.

mother and cousin incompetent to testify. But that is not what the trial judge did. In reality, after listening to and considering these two witnesses' testimony, the judge found their testimony was not *credible*.

¶5. In post-conviction proceedings like this one, it is the trial judge who determines witness credibility.[4] And this Court must give deference to his credibility decisions.[5] Based on this deference, the trial judge's decision to reject Corrothers's evidence was not reversible error. We affirm the trial court's denial of Corrothers's juror-bias post-conviction-relief claim.

**Procedural History**

### I. Capital Murder Convictions

¶6. On the night of July 11, 2009, Clark and her family were brutally attacked and robbed. At 11:00 pm, her son Taylor, an occasional marijuana dealer, drove to his family's home and jumped out of the car. As he ran toward the house, his brother Joshua saw an armed man—whom Joshua later identified as Corrothers—emerge from the passenger side of Taylor's car. Corrothers chased Taylor toward the house as Taylor screamed to wake his parents. His father, Frank, ran to Taylor's aid. And they both held the door shut to keep Corrothers out of the house. But Corrothers shot through the door. His bullets struck and killed Frank. Corrothers then entered the house and shot Clark twice, but she survived. Corrothers also shot Taylor while Taylor was trying to subdue him. Taylor died from the

---

[4] *State v. Scott*, 233 So. 3d 253, 259 (Miss. 2017).

[5] *Id.* at 263.

gunfire. After demanding cash and car keys from Clark and Joshua, Corrothers fled in Taylor's car.

¶7. A jury convicted Corrothers of two counts of capital murder for killing Frank and Taylor during a robbery. It also convicted Corrothers of one count of aggravated assault for shooting Clark. The jury sentenced Corrothers to death for the two capital murders. And because he was an habitual offender, Corrothers was sentenced to life for the aggravated assault. Corrothers appealed his convictions and sentences. We affirmed. *Corrothers I*, 148 So. 3d 278.

## II.    Petition for Post-Conviction Relief

¶8. Corrothers then petitioned this Court for permission to seek post-conviction relief. He raised ten issues—nine of which this Court denied. *Corrothers III*, 255 So. 3d 99. But for one claim, this Court did grant Corrothers leave to seek post-conviction relief in the trial court. *Id.* at 111-12.

¶9. In his petition, Corrothers suggested his Sixth Amendment right to trial by an impartial jury had been violated because one of the jurors was biased. As proof, he attached two affidavits to his PCR petition—one by his mother, Vonda Corrothers Agulanna, and another by his cousin Makyia Sanders. Both claimed they observed a female juror improperly communicating with Clark during the trial.[6] We determined Corrothers's

---

[6] Agulanna attested—

> During the trial, I noticed that a heavyset white female juror was communicating a lot of information to Tonya Clark when the jury would enter the courtroom. During the time the verdict was about to be read at sentencing, I noticed that this same juror said to Tonya Clark, "We got it."

4

"allegation of improper juror contact warrant[ed] an evidentiary hearing." *Id.* at 111-12. We did so because, "[w]here allegations of juror impartiality have been made, the United States Supreme Court 'has long held that the remedy . . . is a hearing in which the defendant has the opportunity to prove actual bias.'" *Id.* at 112 (second alteration in original) (quoting *Smith v. Phillips*, 455 U.S. 209, 216, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982)). So, [i]n light of Corrothers's allegations," this Court granted him "the opportunity to prove actual juror bias." *Id.*

### III. Interlocutory Appeal

¶10. Four year after granting leave, the State petitioned this Court for permission to file an interlocutory appeal. The State sought review of the newly appointed trial judge's order. Contrary to the original trial judge's decision,[7] the new judge granted unsupervised interviews of all jurors and alternates who served on Corrothers's trial—except for the juror alleged to have made the improper communications with Clark.

¶11. This Court granted the State's petition and reversed the trial judge's order. Order, *State v. Corrothers (Corrothers IV)*, No. 2021-IA-00836-SCT (Miss. Nov. 4, 2021). We

And Sanders attested —

> I attended the trial. I remember seeing a juror, who was a white lady, smile and wink her eye at Taylor's mother during the trial. I thought that it was unusual for the juror to be allowed to do that. I would be able to identify the juror if I saw her today.

[7] The original trial judge, Andrew K. Howorth, retired while Corrothers's PCR was pending. Before he left the bench, Judge Howorth directed Corrothers's counsel not to contact any jurors except the female juror in question.

5

ruled that the new trial judge misapplied Mississippi Rule of Evidence 606(b) and also did not, as directed by *Gladney v. Clarksdale Beverage Co.*, properly balance Corrothers's "right to inquire into the jury verdict and the right of each juror to be free from harassment and secure in their verdict." Order, *Corrothers IV*, No. 2021-IA-00836-SCT, at *2 (quoting *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 418 (Miss. 1993)). At that point, Corrothers had not made the requisite showing under *Gladney* to conduct juror interviews. Order, *Corrothers IV*, No. 2021-IA-00836-SCT, at *2. But consistent with the predecessor judge's ruling, we did emphasize that Corrothers could interview the juror alleged to have made the improper communications, as well as Clark. *Id.*

¶12. Corrothers filed a motion to reconsider. He argued this Court's interlocutory-appeal decision should be vacated as moot because—in the interim between the trial judge's order permitting juror interviews and this Court's decision—his lawyer had already interviewed almost all of the jurors. We denied the motion.

### IV. Denial of Post-Conviction Relief

¶13. On December 22, 2023, the trial court held an evidentiary hearing on Corrothers's juror-bias claim. Corrothers presented two witnesses—his mother and his cousin. His mother, Agulanna, testified she saw the female juror "stand[,] positioning herself with that family"—meaning Clark's family. She said she eventually realized the juror was communicating with Clark when the jury would enter the courtroom. She also claimed to see the juror mouth the words "we got him" to Clark. Corrothers's cousin Sanders also testified that she saw the juror mouth the words "we got him" at a woman in the courtroom. Sanders

6

claimed the juror winked and smiled at Clark.

¶14. Corrothers did not call the juror in question to testify. Nor did Corrothers call Clark or any other witnesses to the court proceedings that day, including any of the jurors who had already been interviewed before this Court reversed the trial court's permission-to-interview order.

¶15. At the end of the hearing, the trial judge denied Corrothers post-conviction relief. Specifically, the trial judge found Corrothers's two witnesses were not credible. And Corrothers presented no other credible evidence that improper communications between a juror and Clark occurred indicating that juror's bias. Specifically, Corrothers "did not provide testimony of anyone else in the courtroom who observed this communication—made in open court and therefore not privately—between the juror and Clark." And Corrothers "provided no evidence that another person in the courtroom observed any communication by the juror and Clark during the entirety of the trial." Thus, Corrothers failed to prove he was entitled to relief based on his biased-juror claim.

¶16. Corrothers timely appealed this decision.

## Discussion

### I. The trial judge did not rule Corrothers's mother and cousin were incompetent to testify. Neither did he exclude their testimony.

¶17. Corrothers first argues that the trial judge "improperly disregarded the testimony of [his mother] Vonda Corrothers Agulanna and [his cousin] Makyia Sanders and improperly concluded, in effect, that they were incompetent to testify." But the record clearly shows the judge permitted both Agulanna and Sanders to testify and considered their testimony.

7

### A. The trial judge determines credibility.

¶18. What the trial judge did not do was find their testimony *credible*.

¶19. Corrothers concedes there is a difference between a witness's competency and a witness's credibility. Just because a witness is deemed competent to testify under Mississippi Rule of Evidence 601 does not mean the fact-finder must disregard a witness's potential bias and its impact on her credibility. *See* MRE 616 ("Evidence of a witness's bias, prejudice, or interest—for or against a party—is admissible to attack the witness's credibility."). In post-conviction hearings like this one, "the trial judge . . . sits as the trier of fact and assesses the totality of the evidence as well as the credibility of witnesses." *Scott*, 233 So. 3d at 259 (internal quotation mark omitted) (quoting *Doss v. State,* 19 So. 3d 690, 714 (Miss. 2009)). And "[t]he finder of fact 'is free to accept all, part, or none' of the evidence presented." *Keller v. State*, 306 So. 3d 706, 714 (Miss. 2020) (quoting *Thompson v. Dung Thi Hoang Nguyen*, 86 So. 3d 232, 236-37 (Miss. 2012)).

¶20. Here, the trial judge rejected Agulanna's and Sanders's testimony, finding it was not credible—as the judge was free to do. *Id.* The judge based his credibility decision on the witnesses' close familial relationship to Corrothers. And the judge's skepticism was further heightened by Corrothers's failure to present any unbiased witnesses from his trial to corroborate his mother's and cousin's claims.

¶21. Corrothers argues his mother's and cousin's testimony was consistent between themselves—a fact, he insists, should have weighed in favor of its credibility. But the judge did not believe them. And Corrothers offered no nonfamilial testimony. Specifically,

Corrothers opted against calling the unnamed juror alleged to have communicated with Clark, even though this Court's order specifically allowed him to interview her before the hearing. Nor did he call Clark or any of the other dozens of observers in the courtroom that day. Finally, he did not call any of the jurors he interviewed before this Court's order reversing the trial court's earlier decision. The reason he chose not to call them was, as his counsel admitted, "none of the interviews produced any information relevant to the juror bias claim." In other words, none of them observed any improper communication.[8]

¶22. As we have emphasized in the capital post-conviction context, "the trial judge—not this court—is the 'sole authority for determining credibility of the witnesses.'" **Scott**, 233 So. 3d at 263 (quoting **Doss**, 19 So. 3d at 694). And "[o]ur standard of review requires we defer to his credibility determination." **Id.**

> **B.** **This Court's granting leave to pursue the juror-bias claim was not tantamount to finding the claim had merit.**

¶23. Because it is for the trial judge—not this Court—to evaluate a PCR witness's credibility, Corrothers's alternate argument also fails.[9] Corrothers suggests the trial judge's

---

[8] Corrothers's counsel also informed the State via email, "We have reached out to all the jurors and alternates as allowed by the court. At this time, we are awaiting a response from two jurors. I have not found a juror who witnessed another juror communicating with anyone in the audience—either nodding or mouthing words."

[9] Corrothers also argues the trial judge's denying the State's summary-judgment motion established there was in fact evidence to support his juror-bias claim. But when considering the State's summary-judgment motion, the trial judge had to view the evidence "in the light most favorable" to Corrothers. **Anderson v. State**, 185 So. 3d 403, 405 (Miss. Ct. App. 2015) (quoting **Davis v. Hoss**, 869 So. 2d 397, 401 (Miss. 2004)). By contrast, at the evidentiary hearing, the trial judge, as fact-finder, did not have to view Corrothers's evidence favorably. Instead, he was "'free to accept all, part, or none' of the evidence

lack-of-credibility finding runs counter to this Court's finding. Corrothers points to the fact this Court granted him permission to present his juror-bias claim to the trial court. Citing Mississippi Code Section 99-39-27(5) (Rev. 2020), Corrothers asserts that our granting leave means we have already determined that Corrothers, through his mother's and cousin's affidavits, presented a substantial showing of the denial of a federal or state right. So he reasons that the trial judge's determination that Corrothers failed to make the requisite showing for post-conviction relief at the hearing contradicts this Court's earlier ruling.

¶24. But Corrothers's argument is not supported by this Court's actual ruling. As we explained, the very purpose of granting an evidentiary hearing was to give Corrothers "the opportunity *to prove* actual juror bias." ***Corrothers III***, 255 So. 3d at 112 (emphasis added). We did not rule that, in our view, the claim had already been proved by credible evidence. ***Id.*** If that were true, we could have gone ahead and granted relief without sending the claim to the trial court for a hearing. Miss. Code Ann. § 99-39-27(7)(a) (Rev. 2020). Instead, we ruled, based on "Corrothers's *allegations*" of juror bias, he was entitled to an evidentiary hearing. ***Corrothers III***, 255 So. 3d at 112 (emphasis added).

¶25. At the hearing, the trial judge concluded Corrothers failed to prove his allegations were true. And we must defer to that determination. ***Scott***, 233 So. 3d at 263.

### II. The trial judge did not deny Corrothers's right to compulsory process.

¶26. Corrothers's second argument is a variation of his first. He insists that, because the trial judge "excluded" the testimony of his two witnesses, he was denied the Sixth

presented." ***Keller***, 306 So. 3d at 714 (quoting ***Thompson***, 86 So. 3d at 237).

10

Amendment right to compulsory process. *See* U.S. Const. amend VI.

¶27. But as just discussed, the trial judge did not exclude Agulanna and Sanders as witnesses. Both were permitted to testify. That is what distinguishes this case from the federal case, ***Harris v. Thompson***, 698 F.3d 609 (7th Cir. 2012), which Corrothers argues is "remarkably similar" to this one. In ***Harris***, the trial judge ruled (erroneously) the defendant's child witness was incompetent to testify—thus the jury never heard or considered her testimony. ***Id.*** at 612-13. That is not what happened here. Here, the trial judge, as fact-finder, heard and considered testimony from Corrothers's two witnesses. He just did not believe them. So Corrothers's argument fails. No Sixth Amendment violation occurred.

### III. By applying *Gladney*'s procedural framework to Corrothers's juror-bias claim, the trial court did not deny Corrothers due process or effective assistance of counsel.

¶28. Corrothers's third argument is that, by denying his counsel unfettered access to all jurors, the trial court deprived Corrothers of his right to constitutionally effective counsel. Because counsel has a duty to investigate post-conviction claims, Corrothers seems to suggest that application of ***Gladney*** rendered his post-conviction proceedings fundamentally unfair. And he requests a new PCR hearing "at which he [is] allowed to present all available evidence of the communications that were broadcast in open court from the juror in question, to include the testimony of the juror in question and all other jurors."

#### A. Corrothers cannot show any prejudice.

¶29. Corrothers's argument completely ignores the fact that, during the period between the trial judge's order permitting unsupervised juror interviews and this Court's interlocutory-

appeal decision reversing that order, Corrothers's counsel admittedly interviewed "most of the eleven jurors and alternates who were unimplicated by the juror bias claim." And according to his lawyer, "[a]s it turned out, *none of the interviews produced any information relevant to the juror bias claim*."[10] (Emphasis added.)

¶30. When seeking reconsideration of this Court's interlocutory-appeal decision, Corrothers went so far as to argue to this Court that, because interviews had already been conducted and yielded no relevant evidence, this Court's interlocutory-appeal order was moot and should be vacated. In other words, by Corrothers's own admission, his counsel did in fact perform the investigation he now claims he was unjustly prohibited from conducting. And according to his attorney, that wide-net investigation failed to produce *any* evidence to support his claim that a juror improperly communicated with Clark. More specifically, as his counsel informed the State, counsel did "not f[i]nd a juror who witnessed another juror communicating with anyone in the audience—either nodding or mouthing words."

¶31. For this reason, Corrothers's current argument to this Court—that his counsel was prevented from gathering and presenting "all available evidence of the communications that were broadcast in open court from the juror in question"—fails. Corrothers cannot demonstrate he is entitled to a new post-conviction hearing to present evidence he has already conceded does not exist.

### B. Gladney*'s procedural framework applied.*

¶32. Moreover, Corrothers's argument that *Gladney*'s procedural framework did not apply

---

[10] *See supra* n.8.

to his specific claim of juror bias not only clashes with this Court's prior order in his case but also with this Court's opinion in *Batiste v. State*, 337 So. 3d 1013, 1023-26 (Miss. 2022).

¶33.   Corrothers asserts that his specific juror claim did not hinge on surveying the thought processes of the jurors during deliberations—rather, his claim is that an observable improper communication by one of the jurors occurred in the courtroom.  So he reasons his counsel should have been permitted to interview the other jurors in the courtroom that day without first seeking leave of the court and without having to make the substantiation required by *Gladney*.

¶34.   While framed as a trial-judge error, Corrothers's argument is clearly aimed at this Court's interlocutory-appeal order.  When reviewing the State's interlocutory appeal, we were certainly aware of Corrothers's specific juror-bias claim, having previously granted him leave to pursue it in the trial court.  In fact, in the interlocutory-appeal order, this Court emphasized that Corrothers's post-conviction petition alleged "a very specific claim of juror bias—namely, that his mother and cousin observed a lone particular female juror improperly communicating during trial with Clark."  Order, *Corrothers IV*, No. 2021-IA-00836-SCT, at *3 (citing *Corrothers III*, 255 So. 3d at 111).  And in addressing this issue, we made clear that *Gladney*'s procedural framework applied to Corrothers's post-conviction claim.  Order, *Corrothers IV*, No. 2021-IA-00836-SCT, at *3.

¶35.   Since that ruling, we have had another opportunity to address *Gladney* in the post-conviction context when allegations of improper juror communication arise.  In *Batiste*, we similarly faced post-conviction counsel's contacting jurors without first obtaining the trial

13

court's permission. *Batiste*, 337 So. 3d at 1024. And we made clear that allegations of improper juror contact are precisely the type of alleged misconduct for which *Gladney*'s procedural protections apply. *Id.* at 1024-25 (citing *Carr v. State*, 873 So. 2d 991, 1005-07 (Miss. 2004)).

¶36. And for good reason. As this Court has explained, "there is a general reluctance after verdict to haul in and probe jurors for potential instances of bias, misconduct, or extraneous influences." *Gladney*, 625 So. 2d at 418 (citing *United States v. Infelise*, 813 F. Supp. 599, 605 (N.D. Ill. 1993); *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). This Court has been clear that "inquiry will not be permitted as a 'mere fishing expedition.'" *Id.* (quoting *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988)). To prevent such an expedition, "a balance must be struck between the right to inquire into the jury verdict and the right of each juror to be free from harassment and secure in their verdict." *Id.*

¶37. To help strike that balance, we "established a procedure for trial courts to utilize when allegations of juror misconduct or extraneous information improperly brought to the jury's attention are made." *Batiste*, 337 So. 3d at 1024 (citing *Roach v. State*, 116 So. 3d 126, 132 (Miss. 2013)). And that procedure is the one established in *Gladney*.[11] *Batiste*, 337 So. 3d

---

[11] Under this procedure—

First, after a party informs the trial court of potential improper influence on the jury or juror misconduct, the court must determine if an investigation is warranted. [*Roach*, 116 So. 3d at 132] (citing *Gladney*, 625 So. 2d at 418). "An investigation is warranted if the trial judge finds that 'good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.'" *Id.* (quoting *Gladney*, 625 So. 2d at 419). Without

14

at 1024.

¶38.   Thus, contrary to Corrothers's assertion, requiring Corrothers to substantiate his allegations of improper communication before being permitted to interview jurors outside the trial judge's presence did not unfairly hamper his counsel's ability to investigate his claim.  This is especially true here, since his counsel *did* actually interview the jurors.  So he is not entitled to a new PCR hearing.

### IV.   The trial judge's additional conclusion that one alleged communication between the unnamed juror and Clark occurred after the trial's conclusion, even if error, was not reversible error.

¶39.   Shifting back to the trial judge's final order denying post-conviction relief, Corrothers next takes issue with one of the trial judge's findings.

¶40.   In his order denying Corrothers post-conviction relief—after finding Corrothers's two witnesses lacked credibility and that Corrothers provided no other evidence that anyone else observed any communication between the unnamed juror and Clark during the entire trial—the trial judge made an additional finding.  He found that "[t]he alleged comment was not made while a matter was pending before the jury."  Instead, "[t]he alleged comment 'We got it' occurred during the trial's sentencing phase, after the jury had deliberated and reached its sentence of death."

¶41.   On appeal, Corrothers argues this finding was incorrect as a matter of law.  Corrothers asserts that a verdict is final only after it is accepted by the trial court and ordered final.

---

a "threshold showing of external influences," the inquiry ceases. *Id.* (internal quotation marks omitted) (quoting ***Gladney***, 625 So. 2d at 419).

***Batiste***, 337 So. 3d at 1024.

Moreover, Corrothers claims the timing of the alleged improper communication is irrelevant—it would still be evidence of juror bias even though it occurred after the jury deliberated.

¶42.   But we need not step off into Corrothers's timing argument.  The reason for this is simple—the trial judge concluded Corrothers presented no credible evidence that the words "we got it" were ever uttered.  Because the trial judge's lack-of-credibility finding—which is entitled to this Court's deference—supports denying Corrothers post-conviction relief, no reversible error occurred.

### V.   The trial judge did not err by denying additional juror interviews.

¶43.   As part of his final order denying post-conviction relief, the trial judge made a related ruling that Corrothers was not entitled to interview the additional jurors and alternate jurors. Applying *Gladney*, the judge determined Corrothers did not "clearly substantiate that a specific, non-speculative juror impropriety occurred."  *Gladney*, 625 So. 2d at 419.

¶44.   Corrothers challenges this decision on appeal.  He claims the two affidavits attached to his petition for post-conviction relief were sufficient under *Gladney* to warrant a hearing about the alleged improper communication.  But as we have said, "[t]he sufficiency of such evidence" to trigger a *Gladney* hearing "shall be determined by the trial court . . . ."  *Id.*  And here, Corrothers failed to present any testimony from the alleged juror who communicated with Clark or from Clark herself.  Nor did he present testimony from any other non-juror in the courtroom that day besides two of his family members.  That is why the trial judge found no reason to call the additional jurors in for an evidentiary hearing.  This was the trial judge's

16

call to make. *Id.* And we discern no abuse of discretion in this decision.

¶45. This is especially so given that, as already discussed, Corrothers's post-conviction counsel had actually interviewed nine of the eleven additional jurors. And counsel admitted none of the interviewed jurors observed a female juror communicate with Clark. So even if the trial judge had abused his discretion by denying a *Gladney* hearing—which he did not—Corrothers cannot show prejudice from the trial judge's ultimate ruling that a *Gladney* hearing was not required.

### VI. The trial judge did not err by concluding Corrothers was not entitled to post-conviction relief.

¶46. Finally, Corrothers asserts he is entitled to post-conviction relief based on his juror-bias claim. This last argument is essentially a summation of his prior arguments.

¶47. As discussed, the trial judge determined the evidence Corrothers presented about the unnamed female juror was not credible. And this Court must defer to that lack-of-credibility finding. Because Corrothers failed to present credible evidence of juror bias, the trial court did not reversibly err by denying Corrothers post-conviction relief on his juror-bias claim.

¶48. Thus, we affirm.

¶49. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS AND KING, P.JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**